# SCHUMACHER v. GREAT NORTHERN RAILWAY COMPANY.

## (136 N. W. 85.)

**Marriage — legislative power — what shall be recognized as the marriage status.**

1. It is within the legitimate exercise of the legislative power of the state to declare, as to its citizens, what shall be recognized as the marriage status.

**Marriage — common-law marriage.**

2. Prior to the enactment of chapter 21, Laws of 1890, the common-law marriage was expressly recognized as valid in this state, but by the enactment of said chapter, which is still in force as §§ 4032 to 4042, Rev. Codes 1905, which expressly repealed the old statute *in toto*, it was unquestionably the legislative intent to abrogate such common-law marriage in this state, and such intent must accordingly be given effect.

**Marriage — statutory provision.**

3. The words, "the marriage relation shall be entered into . . . only as provided by law," as used in § 1, chap. 91, Laws 1890, are held to be mandatory and prohibitive.

**Appeal and error — reversal — judgment.**

4. Under § 7044, Rev. Codes 1905, this court is expressly authorized, in the cases enumerated therein, to direct judgment *non obstante veredicto* notwithstanding the prior entry of judgment in the trial court.

Opinion filed January 4, 1912. On rehearing April 27, 1912.

Appeal by defendants from a judgment of the District Court for Ward County, *E. T. Burke*, J., in plaintiff's favor, and from an order denying a motion for judgment notwithstanding the verdict, or for a new trial, in an action brought to recover damages for the alleged negligent killing of plaintiff's intestate.

Reversed.

*Murphy & Duggan*, for appellants.

Common law marriages, so-called, cannot be entered into under the laws of this state. Norman v. Norman, 121 Cal. 620, 42 L.R.A.

Note.—The authorities on the question of the effect of statutes on common-law marriages are collated in a note in 2 L.R.A.(N.S.) 353.

As to validity of common-law marriages, generally, see note in 79 Am. St. Rep. 361.

343, 66 Am. St. Rep. 74, 54 Pac. 145; Morrill v. Palmer, 68 Vt. 1, 33 L.R.A. 411, 33 Atl. 829; Milford v. Worcester, 7 Mass. 48.

Evidence insufficient to show a marriage at common law. Hutchins v. Kimmell, 31 Mich. 126, 18 Am. Rep. 164; Henry v. Taylor, 16 S. D. 424, 93 N. W. 641; Re Terry, 58 Minn. 268, 59 N. W. 1014.

*F. B. Lambert,* for respondent.

Sufficient evidence submitted to prove a statutory marriage. Gibson v. Gibson, 24 Neb. 394, 39 N. W. 466; Harman v. Harman, 16 Ill. 85; Miller v. White, 80 Ill. 580; 8 Enc. Ev. p. 442; p. 443, note; Botts v. Botts, 108 Ky. 414, 56 S. W. 677, 961; Senge v. Senge, 106 Ill. App. 140; 26 Cyc. p. 878, note 21; Fornshill v. Murray, 1 Bland, Ch. 479, 18 Am. Dec. 344.

Common law marriage good in North Dakota. 1 Bishop, Marr. & Div. § 691; 2 Bishop, Marr. & Div. § 423; Lewis v. Tapman, 90 Md. 294, 47 L.R.A. 385, 45 Atl. 459; Ahlberg v. Ahlberg, 24 N. Y. Supp. 919; Hulett v. Carey, 66 Minn. 327, 34 L.R.A. 384, 61 Am. St. Rep. 419, 69 N. W. 31; Rose v. Clark, 8 Paige, 580; Askew v. Dupree, 30 Ga. 173; Meister v. Moore, 96 U. S. 76, 24 L. ed. 826; State v. Zichfeld, 23 Nev. 304, 34 L.R.A. 784, 62 Am. St. Rep. 806, 46 Pac. 802; Dyer v. Bannock, 66 Mo. 391, 27 Am. Rep. 359; State v. Worthingham, 23 Minn. 528; Ex parte Romans, 78 S. C. 210, 58 S. E. 614; Pegg v. Pegg, 138 Iowa, 572, 115 N. W. 1027; Jackson v. Banister, 47 Tex. Civ. App. 317, 105 S. W. 66.

Fisk, J. On July 11, 1907, one Louis P. Schumacher, an employee in the capacity of brakeman for defendant railway company, was killed as the result of a wreck of a freight train on which he was at such time employed. Plaintiff, the father of deceased, brought this action, as administrator, to recover alleged damages resulting to one Ida Schumacher and her child by the death of Louis. The trial resulted in a verdict in plaintiff's favor for the sum of $5,500. The appeal is from the judgment entered on such verdict and also from an order denying defendants' motion in the alternative for judgment notwithstanding the verdict for a new trial. There are a large number of alleged errors assigned in appellants' brief, but we find it necessary to notice but one. It is practically conceded that the recovery cannot be sustained unless it can be held that the said Ida Schumacher and her infant

child, who were found to be the sole beneficiaries of the recovery, are the legal heirs of the deceased, and this in turn depends on whether respondent's contention that there was a common-law marriage entered into between the deceased and Ida, can be upheld. In the light of the record it cannot be successfully asserted that there is any proof of a marriage between these parties other than what is known as a common-law marriage. Now, do we understand that respondent makes any serious contention to the contrary? At the trial plaintiff sought to show such a common-law marriage, but the proof thereof was objected to by the defendants; the latter contending that under the statutes of this state such a marriage is not only not recognized, but is clearly prohibited.

So far as we are aware this is the first time this court has been called upon to pass on this question; and in view of its great importance, not only to the parties directly involved, but to our citizens generally, we have concluded to place our decision squarely on this point, conceding, for the purpose of the case, the sufficiency of the evidence to support a common-law marriage, regarding the sufficiency of which evidence we entertain some doubts.

We deem it beyond controversy that it is within the legitimate legislative power of the state to declare, as to its citizens, what shall be recognized as the marriage status, and what shall be deemed contrary to its policy. This being true, decisions of courts recognizing common-law marriages under statutes materially differing from those in this state are of no assistance to us in disposing of the question in hand. We freely admit that, in a majority of the American states, decisions may be found upholding such marriages; but we think they will, without exception, be found, on investigation, to be based on statutes radically different from our own. For a good statement of the general rule as to common-law marriages, as well as a review of the leading cases on the subject, see 1 Andrews, American Law, § 482, from which we quote as follows: "In the absence of a restrictive statute, the manner in which marriage may be entered into and proved, and likewise the manner of its dissolution, depend in no small degree upon the view taken by the court of the nature of marriage. . . . . Those courts which hold that marriage is a mere contract, hold that the common law requires parties who are under no legal disability and a contract substantially in the present time—that is, at the time of beginning the

relation——that 'we take each other now,' and not that 'we take each other at a future time;' that there are two essentials to a valid marriage,— capacity and consent. They do not require a ceremonial marriage, but insist upon a contract of marriage *per verba de presenti* as the beginning of the marriage relation (not necessarily at the beginning of cohabition). The adverse view requires conduct showing the assumption of the status. 'Whatever,' says the supreme court of Illinois, 'may be the rule governing other contracts, the contract of marriage is *jure gentium,* and consent and the assumption of the marriage status are all that is required by natural or public law.' The laws of civilized countries universally provide for some public celebration of marriage, but only in a few countries is such a ceremony as is provided by law absolutely essential to marriage."

In a note the author, after referring to the general rule, says: "In California the Code originally provided that marriage could be entered into by being solemnized, etc., or *'by a mutual assumption of marital rights, duties, or obligations.'* A subsequent revision omitted these, and added that a noncompliance *'by others than the parties'* should not invalidate. It was held that there could be no more nonceremonial marriages in that state. Norman v. Norman, 121 Cal. 620, 42 L.R.A. 343, 66 Am. St. Rep. 74, 54 Pac. 143." If the decision of the California court be a sound interpretation of the California statute, and of this we entertain no doubt, it logically follows, with still more forceful reasons, as we shall presently see, that our statute should receive a like interpretation. Prior to 1890 our statute defining the marriage contract was identically the same as the former statute in California, and read as follows: "Marriage is a personal relation arising out of a civil contract, to which the consent of parties capable of making it is necessary. Consent alone will not constitute marriage; it must be followed by a solemnization, *or by mutual assumption of marital rights, duties or obligations.*"

The provisions of the above section, as well as subsequent sections then in force and which are embraced in article 1 of chapter 1 relating to the validity of marriage contracts (Comp. Laws 1887), clearly recognized nonceremonial marriages. But in 1890 the legislature revised the entire law relation to the subject of marriage contracts, making radical changes in the prior statute, and clearly evincing a purpose to abrogate

nonceremonial marriages. The 1890 law (chap. 91) expressly repealed the old statute *in toto,* and the first section of the law defines the marriage contract as follows: "Marriage is a personal relation, arising out of a civil contract to which the consent of the parties thereto is essential; *but the marriage relation shall be entered into, maintained, annulled, or dissolved only as provided by law.*" The words italicized are perfectly clear and susceptible of but one meaning, which is to the effect a radical change in the prior statute by abrogating the policy therein clearly evinced of recognizing nonceremonial marriages. Any other construction would be absurd, as it would ignore not only the plain words of the statute, but also the evident legislative intent to effect a change in the prior statute. The change effected by the amendment to the California statute consisted of the omission of the words "by a mutual assumption of marital rights, duties, or obligations," which omitted words expressly recognized nonceremonial marriages, and by substituting the words, "It must be followed by a solemnization authorized by this code." While, as we have seen, the change in our statute not only omitted such language, but substituted in lieu thereof an express mandate that "the marriage relation shall be entered into, . . . *only* as provided by law." The words just quoted cannot be treated as directory merely, but on the contrary they are clearly mandatory and prohibitive. Any other construction would operate to nullify the plain legislative purpose in changing the former statute.

A very instructive case reviewing the authorities at length and holding in accordance with our views is the case of Re McLaughlin, 4 Wash. 570, 16 L.R.A. 699, 30 Pac. 651. The Washington statute under consideration in that case is not nearly so clear as ours in evincing the legislative intent to abrogate common-law marriages. In holding their statute mandatory and prohibitive, and not merely directory, the following language is used: "It is true the legislature may expressly provide that all marriages not entered into in the ways pointed out by the statutes, and not within the exceptions provided for, shall be held invalid, but this affords no reason for not giving effect to the clear intention otherwise expressed in the legislation existing, because the legislature has not expressly declared all others void. Our statutes in relation thereto would, if upon any other subject, be held mandatory and prohibitive, and we see no reason why the same effect should not

be given to them here, for the law could as well say that all attempted marriages should be valid, notwithstanding the statutory requisites were not complied with."

The rule thus announced was expressly recognized as the established law in Washington in the recent case of Potter v. Pottter, 45 Wash. 401, 88 Pac. 625. See also Morrill v. Palmer, 68 Vt. 1, 33 L.R.A. 411, 33 Atl. 829.

It would serve no good purpose to enter into an extended consideration of cases decided in other states under statutes differing widely from our own, and we shall not attempt to do so. Suffice it to say that notwithstanding the very able and ingenious argument of respondent's counsel, which we have carefully read and considered, together with the many cases cited and claimed by him to be in point under alleged similar statutes, we are forced to the conclusion that his contention is unsound, and that in this state the legislature has, in unmistakable language, intentionally abrogated the common-law marriage.

This conclusion necessitates a reversal of the judgment, and it only remains for us to determine whether appellants are entitled to judgment *non obstante veredicto* as prayed for by them. Respondent contends that a motion for such relief comes too late when made after the entry of judgment in the district court, and certain authorities are cited and relied on in support of such contention; but in the light of the clear and specific provisions of our Code (Rev. Codes 1905, § 7044) which, of course, are controlling and which respondent's counsel has evidently overlooked, we are compelled to overrule such contention. The statute referred to, so far as material, is as follows: "In all cases where at the close of the testimony . . . a motion is made by either party to the suit requesting the trial court to direct a verdict in favor of the party making such motion, which motion was denied, the trial court on motion made that judgment be entered notwithstanding the verdict, or on motion for a new trial, shall order judgment to be entered in favor of the party who was entitled to have a verdict directed in his or its favor; and the supreme court of the state, on appeal from an order granting or denying a motion for a new trial . . . or upon a review of such order or on appeal from the judgment, may order and direct judgment to be entered in favor of the party who was entitled to have such verdict directed. . . ."

The judgment and order appealed from are accordingly reversed, and the District Court is directed to enter a judgment in defendants' favor, dismissing the action.

BURKE, J., not participating, Honorable S. L. NUCHOLS, Judge of the Twelfth Judicial District, sitting in his place by request.

## On Rehearing.

PER CURIAM.   A rehearing having been granted on the question whether, under our statutes, common-law marriages have been prohibited in this state, such question has again been argued at length by counsel, and, after due consideration, we see no reason to change our former views.   An added, and, to our minds, a very persuasive reason for believing that the legislature in enacting chapter 91, Laws 1890, must have intended to prohibit common-law marriages, is the fact that certain sections of the prior statute providing for declarations of marriage where no solemnization thereof was had, and requiring, for the purposes of authentication, the registration of such declarations, and prescribing that such declarations or certified copies thereof shall be presumptive evidence of the fact of the marriage, were by such act expressly repealed.   This is most conclusive evidence of such legislative intent, for it is unbelievable that such salutory provisions would not have been continued in force if the common-law marriages were to continue to be thereafter recognized or permitted.   See Comp. Laws 1887, §§ 2545 and 2552, being §§ 46 and 53 Civil Code 1887.   Also § 18 of chap. 91, Laws 1890.

Counsel for respondent argues that the statutory language in § 1, chapter 91, aforesaid, "but the marriage relation shall be entered into, . . . only as provided by law" means as provided by either statutory or common law.   This is manifestly erroneous.   Such a construction would render the entire statute meaningless and absurd.   That the words "as provided by law" have reference merely to the statutory, and not to the common law, is perfectly apparent.   See Brinckerhoff v. Bostwick, 99 N. Y. 185, 1 N. E. 663.   Also 25 Cyc. 163 and 164 and cases cited.   In the Brinckerhoff Case the court of appeals of New York said: "Such expressions as 'required by law,' 'regulated by law,'

'allowed by law,' 'made by law,' 'limited by law,' 'as prescribed by law,' 'a law of the state,' are of frequent occurrence in the Codes and other legislative enactments; and they are always used as referring to statutory provisions only."

The order previously made will stand.