ROBERT J. WILSON, Admr., Appellee, *vs.* ROBERT J. COOK, Appellant.

*Opinion filed December 17, 1912.*

1. MARRIAGE—*power of State to regulate marriages of its citizens in other States.* Every State has power to declare that marriages between its citizens in foreign States in disregard of the statutes of the State of their domicile will not be recognized by the courts of the latter State though valid where celebrated.

2. SAME—*exceptions to rule that a marriage valid where celebrated is valid everywhere.* Marriages which are contrary to the law of nature, as generally recognized by christian nations, and marriages which are declared by positive law to have no validity, are exceptions to the general rule that marriages valid where celebrated are valid everywhere.

3. SAME—*marriage in violation of section 1a of Divorce act is void wherever celebrated.* Section 1a of the Divorce act, (Laws of 1905, p. 194,) which prohibits either party from marrying another person within one year from the time the divorce was obtained, is not merely penal in character, but is a statute lawfully imposing upon citizens of this State, as a positive policy of the State for the protection of the morals and good order of society against serious social evils, an incapacity to contract marriage, and a marriage contracted in disregard of its prohibition is void wherever celebrated.

4. SAME—*when there can be no presumption of a common law marriage.* The amendment of section 4 of the Marriage act, which declares common law marriages thereafter entered into to be null and void, went into effect July 1, 1905, and no presumption of a common law marriage can arise from the fact that parties who attempted marriage, after such date, in violation of section 1a of the Divorce act, continued to live together as man and wife until the death of one of them.

APPEAL from the Probate Court of Madison county; the Hon. J. P. STREUBER, Judge, presiding.

B. R. BURROUGHS, and BURROUGHS & RYDER, for appellant:

In the absence of evidence our courts presume that the common law obtains in a foreign State. *Schlee* v. *Guckenheimer*, 179 Ill. 593.

Where the celebration of the marriage is once shown, everything essential to its validity will be presumed until the contrary is shown. *Cartwright* v. *McGown*, 121 Ill. 388; *Barber* v. *People*, 203 id. 543; *Potter* v. *Clapp*, 203 id. 592; *Schmisseur* v. *Beatrie*, 147 id. 210.

Where persons who are incapable of contracting marriage because of some statutory inhibition leave the State of their domicile, go into another State and there contract marriage according to the laws of that State, such marriage is valid in the State of their domicile upon their return thereto. *VanVoorhis* v. *Brintnall*, 86 N. Y. 18; *Thorp* v. *Thorp*, 90 id. 602; *Putnam* v. *Putnam*, 25 Mass. 433; *Commonwealth* v. *Lane*, 113 id. 458; *Dickson* v. *Dickson*, 1 Yerg. 26.

A divorce statute which forbids the re-marriage of the guilty person does not operate against the re-marriage in another State, although the parties go there for the purpose of evading the law of the domicile. 14 Cyc. 729; *Medway* v. *Needham*, 16 Mass. 157.

If parties to a formal marriage, in the beginning, desire and intend marriage in good faith as a matter of fact, but an impediment exists preventing such marriage, and the desire and intention continue after the impediment is removed, and the parties continue in the relation of husband and wife and cohabit as such, it is sufficient proof of a marriage. *Manning* v. *Spurck*, 199 Ill. 447; *Land* v. *Land*, 206 id. 288.

E. G. HILL, for appellee:

Section 1*a* of chapter 40 of the statutes of Illinois is an enactment or declaration of a public policy, which applies to those of its residents and citizens who are subject to its provisions, without exception, no matter where they are, and operates as a disqualification to re-marry within the prohibited period. *Lanham* v. *Lanham,* 17 L. R. A. 804; *Pennegar* v. *State,* 87 Tenn. 244; *McLennan* v. *McLennan,* 31 Ore. 480; *Stull's Estate,* 183 Pa. 625.

Marriage, as between the parties and the State, is not technically a contract which must be measured and construed in accordance with the laws and rules applicable to contracts generally, but it is a status whereof the rights, obligations, preservation and dissolution are controlled by the State, which is a party interested in it and its dissolution, and laws enacted by the State to govern the same are declarations of a public policy to control all those of its residents and citizens who come within their scope. 19 Am. & Eng. Ency. of Law, (2d ed.) 1159, 1160; *Brand* v. *Brand,* 252 Ill. 134; *Decker* v. *Decker,* 193 id. 285.

A common law marriage does not arise by mere continued cohabitation following a void marriage, after the impediment has been removed. *Cartwright* v. *McGown,* 121 Ill. 388; *Lanham* v. *Lanham,* 17 L. R. A. 804.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

On November 13, 1906, the appellant, Robert J. Cook, obtained a divorce from his wife in Clinton county, in this State, and on February 13, 1907, was married in St. Louis, Missouri, to Mary A. Moore, who resided in Madison county, in this State. Thereafter, until her death, on January 4, 1912, they resided together as husband and wife on certain premises owned by her in Madison county. Robert J. Wilson was appointed administrator of her estate and

filed a petition in the probate court to sell the real estate on which they had lived, to pay debts, making the appellant a defendant, and alleging that the appellant claimed to have been the husband of the deceased at the time of her death and was in possession of the real estate described in the petition, claiming to be entitled to homestead and dower therein. The appellant answered, alleging his marriage to Mary A. Moore as above stated; that they resided on the premises in question at the time of her death and that he was entitled to homestead and dower therein. Upon a hearing the court found that appellant was not the husband of the deceased and was not entitled to homestead and dower in the premises, and entered a decree of sale, from which this appeal is prosecuted.

The first question in the case is whether or not the marriage of the appellant and the deceased was valid. Section 1a of chapter 40 (Hurd's Stat. 1911, p. 862,) provides: "That in every case in which a divorce has been granted * * * neither party shall marry again within one year from the time the decree was granted; * * * and every person marrying contrary to the provisions of this section shall be punished by imprisonment in the penitentiary for not less than one year, nor more than three years, and said marriage shall be held absolutely void." The marriage of the appellant was within one year from the time the decree of divorce was granted. It is undoubtedly the general rule of law that a marriage valid where it is celebrated is valid everywhere, but there are two well recognized exceptions, viz., marriages which are contrary to the law of nature, as generally recognized by christian nations, and those which are declared by positive law to have no validity. Every State has the power to enact laws which will personally bind its citizens while sojourning in a foreign jurisdiction provided such laws profess to so bind them, and to declare that marriages contracted between its citizens in foreign States in disregard of the statutes of

the State of their domicile will not be recognized in the
courts of the latter State though valid where celebrated.
(*Roth* v. *Roth,* 104 Ill. 35.) The question, therefore, is
whether the statute quoted was clearly intended to apply
to marriages contracted outside the State, for unless the
intention is clear, the operation of the statute must be lim-
ited to marriages within the State.

Formerly laws of this character in other States have
usually prohibited the marriage of the party in fault against
whom the divorce was granted, and they have been con-
strued as penal in their nature and having no extra-terri-
torial effect. Marriages contracted outside the State have
in this view been held valid in States having such statutes.
(*Commonwealth* v. *Lane,* 113 Mass. 458; *VanVoorhis* v.
*Brintnall,* 86 N. Y. 18; *State* v. *Shattuck,* 69 Vt. 403;
*Frame* v. *Thorman,* 102 Wis. 654.) This statute is not,
however, penal in its character. It is no part of its pur-
pose to punish the wrongdoer, for it treats the innocent and
the guilty alike. The State of Wisconsin has a similar
statute, which came before the Supreme Court, and the
language of the court is applicable here: "Upon no rea-
sonable ground can this general restriction be explained, ex-
cept upon the ground that the legislature deemed that it
was against public policy and good morals that divorced
persons should be at liberty to immediately contract new
marriages. The inference is unmistakable that the legisla-
ture recognized the fact that the sacredness of marriage
and the stability of the marriage tie lie at the very founda-
tion of christian civilization and social order; that divorce,
while at times necessary, should not be made easy nor
should inducement be held out to procure it; that one of
the frequent causes of marital disagreement and divorce
actions is the desire on the part of one of the parties to
marry another; that if there be liberty to immediately re-
marry, an inducement is thus offered to those who have
become tired of one union, not only to become faithless to

their marriage vows, but to collusively procure the sever-
ance of that union under the forms of law for the purpose
of experimenting with another partner, and perhaps yet
another, thus accomplishing what may be called progressive
polygamy; and finally, that this means destruction of the
home and debasement of public morals. In a word, the
intent of the law plainly is to remove one of the most fre-
quent inducing causes for the bringing of divorce actions.
This means a declaration of public policy or it means noth-
ing. It means that the legislature regarded frequent and
easy divorce as against good morals, and that it proposed,
not to punish the guilty party, but to remove an induce-
ment to frequent divorce. To say that the legislature in-
tended such a law to apply only while the parties are with-
in the boundaries of the State, and that it contemplated
that by crossing the State line its citizens could successfully
nullify its terms, is to make the act essentially useless and
impotent and ascribe practical imbecility to the law-mak-
ing power. A construction which produces such an effect
should not be given it unless the terms of the act make it
necessary. The prohibitory terms are broad and sweeping.
They declare, not only that it shall be unlawful for divorced
persons to marry again within the year, but that any such
marriage shall be null and void. There is no limitation as
to the place of the pretended marriage in express terms,
nor is language used from which such a limitation can
naturally be implied. It seems unquestionably intended to
control the conduct of the residents of the State, whether
they be within or outside of its boundaries. Such being, in
our opinion, the evident and clearly expressed intent of the
legislature, we hold that when persons domiciled in this
State and who are subject to the provisions of the law
leave the State for the purpose of evading those provisions,
and go through the ceremony of marriage in another State
and return to their domicile, such pretended marriage is
within the provisions of the law and will not be recognized

256 — 30

by the courts of this State." (*Lanham* v. *Lanham,* 136
Wis. 360.) The following cases are cited as sustaining
the view expressed in the opinion: *Brook* v. *Brook,* 9
H. L. Cas. 193; *Sussex Peerage case,* 11 Cl. & F. 85;
*State* v. *Tutty,* 41 Fed. Rep. 753; *Pennegar* v. *State,* 87
Tenn. 244; *McLennan* v. *McLennan,* 31 Ore. 480; *Stull's
Estate,* 183 Pa. 625. These cases sustain the principle
that where a State has enacted a statute lawfully impos-
ing upon its citizens an incapacity to contract marriage by
reason of a positive policy of the State for the protection
of the morals and good order of society against serious
social evils, a marriage contracted in disregard of the pro-
hibition of the statute, wherever celebrated, will be void.
In the first of these cases it is said: "It is quite obvious
that no civilized State can allow its domiciled subjects or
citizens, by making a temporary visit to a foreign county,
to enter into a contract to be performed in the place of
domicile if the contract is forbidden by the law of the
place of domicile as contrary to religion or morality or to
any of its fundamental institutions."

It is insisted, however, on the part of the appellant,
that the marriage was entered into in good faith, and that,
the parties having, after the removal of the disability, con-
tinued the same apparently valid matrimonial relations as
before, the law will presume a common law marriage be-
tween them. The amendment to section 4 of the Marriage
act, which declared that common law marriages thereafter
entered into should be null and void, went into effect on
July 1, 1905. There can, therefore, be no presumption of
a common law marriage in this case.

The judgment of the probate court was right, and it
is affirmed.                                    *Judgment affirmed.*