### BLANCHE S. WOODWARD v. KATIE M. BLAKE, Jessie A. King, and Charles P. Woodward.

(L.R.A.1918A, 88, 164 N. W. 156.)

**Divorce — judgment and decree — effect of — unmarried state — restoration to — remarriage — neither party may — within three months — marriage before expiration of limitation — not void — may not be assailed collaterally — in probate proceedings.**

Under chapter 70 of the Session Laws of 1901, which provides that the effect of a judgment decreeing a divorce is to restore the parties to the state of

---

NOTE.—For a general discussion as to whether an unlawful or invalid marriage is void or voidable, see note in L.R.A.1916C, 690, from which it appears that the tendency of modern statutes is to make marriages voidable rather than void when-

unmarried persons, except that neither party to a divorce may marry within three months after the time such decree is granted, a marriage contracted by a divorced person less than three months after the decree was rendered is not void, and may not be assailed collaterally upon probate of such person's estate.

Opinion filed July 21, 1917. Rehearing denied August 23, 1917.

From an order of the District Court of Wells County, *Coffey*, J., respondents appeal.

Affirmed.

*J. J. Youngblood* and *John O. Hanchett*, for appellants.

The appellee never became the lawful wife of decedent, because she married him within three months after decree of divorce was granted him from his then wife. That such marriage was in violation of the laws of the state ·and was void, and appellee never having been decedent's lawful wife, she is not now entitled to administration of his estate. Comp. Laws 1913, § 8657; Rev. Codes, 1899, § 2736; Laws 1901, chap. 70.

In states where the statute is penal in its nature, it is held that the incurring of the penalty provided by statute is the only consequence of a violation thereof by divorced parties, and that the new marriage is not void. Crawford v. State, 73 Miss. 172, 35 L.R.A. 224; 18 So. 848; Conn v. Conn, 2 Kan. App. 419, 42 Pac. 1007.

But there is a great distinction between such statutes and the statute of our state, and such difference has been observed by many courts. Park v. Barron, 20 Ga. 702, 65 Am. Dec. 641; McLennan v. McLennan, 5 Or. 480, 38 L.R.A. 863, 65 Am. St. Rep. 835, 50 Pac. 802.

There can be no common-law marriage in this state. The marriage relation can only be entered into in this state in accordance with the provisions of the statute law of the state. Comp. Laws 1913, § 4360.

---

ever the impediment is such as might not have been readily known to both parties before marriage, and where public policy does not rise superior to all consideration of private utility.

On the specific question as to validity and effect of marriage contracted within prohibited time after divorce, and the conflict of laws in regard thereto, see notes in 57 L.R.A. 155, 169; 11 L.R.A. (N.S.) 1082; 17 L.R.A. (N.S.) 800; 26 L.R.A. (N.S.) 179; 28 L.R.A. (N.S.) 753; 43 L.R.A. (N.S.) 355; and L.R.A.1916C, 748.

On validity of statute prohibiting remarriage of either party within certain time after divorce, see note in 128 Am. St. Rep. 1089.

A marriage is dissolved only by the judgment of a court of competent jurisdiction, decreeing a divorce of the parties, and the effect is to restore them to the state of unmarried persons, except that neither shall marry again within three months from the date of the decree, and that therefore the divorce is not absolute until three months have expired. Re Smith, 4 Wash. 702, 17 L.R.A. 573, 30 Pac. 1059.

These parties were entirely incapable of contracting the marriage relation at the time they attempted to do so, and no marriage between them having been solemnized thereafter, it follows that they were never husband and wife. Lanham v. Lanham, 136 Wis. 360, 17 L.R.A. (N.S.) 804, 128 Am. St. Rep. 1085, 117 N. W. 787; Wilson v. Cook, 256 Ill. 460, 43 L.R.A.(N.S.) 365, 100 N. E. 222; Re Elliott, 165 Cal. 339, 132 Pac. 439; Hooper v. Hooper, 67 Or. 187, 135 Pac. 205, 525; Eaton v. Eaton, 66 Neb. 676, 60 L.R.A. 605, 92 N. W. 995, 1 Ann. Cas. 199.

Under our law the decree of divorce does not dissolve the former marriage and restore the parties to a state of singleness until the expiration of three months. It was not necessary that this new statute should expressly declare that a marriage of either of the divorced persons within the time limit of prohibition should be null and void; for the old law expressly so provided, and was not repealed. Drummond v. Irish, 52 Iowa, 41, 2 N. W. 622; Wilhite v. Wilhite, 41 Kan. 154, 21 Pac. 173; McLennan v. McLennan, 31 Or. 480, 38 L.R.A. 863, 65 Am. St. Rep. 835, 50 Pac. 802; Tozier v. Haverhill & A. Street R. Co. 187 Mass. 179, 72 N. E. 953.

*Tracy R. Bangs* and *Arthur L. Netcher,* for appellee.

The cases cited by appellant mostly relate to statutes providing that neither of the divorced parties shall marry again, until after the expiration of the time allowed for appeal, and declaring such remarriage null and void, should they violate the statute. Such statutes are very different in their meaning and application from the statutes of this state, and the distinction has been very clearly made by many of the courts, including those courts whose decisions appellant has cited. McLennan v. McLennan, 31 Or. 480, 38 L.R.A. 863, 65 Am. St. Rep. 835, 50 Pac. 802; Conn v. Conn, 2 Kan. App. 419, 42 Pac. 1006; Wilhite v. Wilhite, 41 Kan. 154, 21 Pac. 173.

These authorities cited by appellant all hold that a divorced person

cannot enter into the marriage relation with a third person until the time for taking an appeal has expired. That is, they shall not be capable of contracting a new marriage with a third person. These statutes go directly to the ability and capacity of the parties to marry or to make such contract. These statutes declare such persons incapable of entering into the contract with a third person until the time for appeal has expired. In the other class of statutes we find the statutory prohibition penal in its nature. Under the first class we find the remarriage absolutely void, while in the other it is often held valid, although the party may be punished criminally for violating such prohibitory statute. Hooper v. Hooper, 67 Or. 187, 135 Pac. 205, 525.

Our statute does not provide that the parties shall be incapable of contracting marriage; it does not provide that the exception is made for the purpose of appeal. Laws 1901, chap. 70; Sess. Laws 1911, chap. 183.

Appellee's position is that chapter 70 means that a judgment of divorce has the effect of an absolute divorce and completely severs the marital relationship that the three months' exception relates to the personal status of the parties interested, and not to their former marriage status; that a remarriage in violation of the three months' provision subjects the offending party to the penalty provided by statute. Rev. Codes 1899, §§ 6812 & 7029.

Our statutes define "absolutely void" marriages, and they nowhere refer to the class of cases to which this case belongs. Rev. Codes 1899, §§ 2722, 2723, 2731, 2732, Comp. Laws 1913, §§ 4359, 4360, 4368, 4369.

The main essentials of the common-law marriage are recognized in this state. Schumacher v. Great Northern R. Co. 23 N. D. 231, 136 N. W. 85; Mickels v. Fennell, 15 N. D. 188, 107 N. W. 53; 9 R. C. L. 503.

It was never the intention of the legislature that such marriages should be void. "What the legislature cannot do except by most positive enactment, courts should not do by strained construction. Luick v. Arends, 21 N. D. 614, 132 N. W. 353; Park v. Barron, 20 Ga. 702, 65 Am. Dec. 641.

"Statutes seemingly mandatory will sometimes be construed to be directory only when necessary to sustain the validity of a marriage not

inexorably void." Mason v. Mason, 101 Ind. 25; Comp. Laws 1913, chap. 70, § 4379; Crawford v. State, 73 Misss. 172, 35 L.R.A. 224, 18 So. 848.

The Minnesota statutes single out and specify particularly those marriages which shall be absolutely void, but nowhere do they so declare upon cases like the one here presented, thus leaving a necessary inference that it was the intention that all other prohibited marriages should be voidable only. The Minnesota statutes are almost identical with our statutes. Rev. Codes 1899, §§ 2722 et seq; State v. Yoder, 113 Minn. 503, L.R.A.1916C, 686, 130 N. W. 10; State v. Walker, 36 Kan. 297, 59 Am. Rep. 556, 13 Pac. 279; Conn v. Conn, 2 Kan. App. 419, 42 Pac. 1006.

There is a great distinction between a statutory prohibition and a declaration of incapacity to contract. State v. Walker, supra; Bishop, Marr. & Div. § 283; Conn v. Conn, supra.

In this state we have absolute divorces,—nothing else. Hagert v. Hagert, 22 N. D. 296, 38 L.R.A.(N.S.) 966, 133 N. W. 1035, Ann. Cas. 1916B, 925; Tuttle v. Tuttle, 21 N. D. 506, 131 N. W. 460, Ann. Cas. 1913B, 1; Rindlaub v. Rindlaub, 19 N. D. 353, 125 N. W. 479; 14 Cyc. 578; Mahnken v. Mahnken, 9 N. D. 188, 82 N. W. 870.

The decree of divorce in this state fixes the personal and individual status of the parties, and has no relation to the former marriage. The parties are by the decree restored to the state of unmarried persons, excepting the prohibition against remarriage within three months. Strand v. Marin, 30 N. D. 170, 152 N. W. 280.

CHRISTIANSON, J. On August 15, 1904, an absolute decree of divorce was entered in the district court of Wells County, in an action then properly pending therein, divorcing Plinn H. Woodward from Kate Woodward. Thereafter on September 30, 1904 said Plinn H. Woodward was married to the petitioner, Blanche S. Woodward, at Minot, North Dakota. From the date of such marriage the said Plinn H. Woodward and the petitioner lived together as husband and wife— up to the death of said Plinn H. Woodward, which occurred on October 22, 1916. The petitioner thereupon applied to the county court of Wells county for letters of administration of the estate of said Plinn H. Woodward. And the three respondents, who are the children of

Plinn H. Woodward by his first wife, filed an answer and cross petition, wherein they asserted that the marriage solemnized at Minot, North Dakota, on September 30, 1904, was and is wholly null and void for the reason that such marriage was prohibited by chapter 70 of the Session Laws of 1901, which reads as follows:

"Marriage is dissolved only,

"1. By the death of one of the parties; or

"2. By judgment of a court of competent jurisdiction decreeing a divorce of the parties.

"The effect of a judgment decreeing a divorce is to restore the parties to the state of unmarried persons, except that neither party to a divorce may marry within three months after the time such decree is granted." Under the laws of this state "marriage is a personal relation arising out of a civil contract to which the consent of the parties thereto is essential, but the marriage relation may be entered into, maintained, annulled or dissolved only as provided by law." Comp. Laws 1913, § 4357.

The common-law marriage has not been recognized as valid in this state since July 1, 1890. See Schumacher v. Great Northern R. Co. 23 N. D. 231, 136 N. W. 85.

Section 4359, Compiled Laws, declares that marriages between certain near relations shall be absolutely void. And § 4360, Compiled Laws, provides that "a marriage contracted by a person having a former husband or wife living, if the former marriage has not been annulled or dissolved, is illegal and void from the beginning unless such former husband or wife was absent and believed by such person to be dead for a period of five years immediately preceding."

Section 4368, Compiled Laws 1913, provides: "A marriage may be annulled by an action in the district court to obtain a decree of nullity for any of the following causes existing at the time of the marriage:

"1. When the party in whose behalf it is sought to have the marriage annulled was under the age of legal consent and such marriage was contracted without the consent of his or her parent or guardian, unless after attaining the age of consent such party freely cohabited with the other as husband or wife.

"2. When the former husband or wife of either party was living and the marriage with such former husband or wife was then in force.

"3. When either party was of unsound mind, unless such party after coming to reason freely cohabited with the other as husband or wife.

"4. When the consent of either party was obtained by fraud, unless such party afterwards will full knowledge of the facts constituting the fraud freely cohabited with the other as husband or wife.

"5. When the consent of either party was obtained by force, unless such party afterwards freely cohabited with the other as husband or wife.

"6. When either party was at the time of the marriage physically incapable of entering into the marriage state and such incapacity continues and appears to be incurable."

Section 4369, Compiled Laws, provides that "an action to obtain a decree of nullity of marriage for causes mentioned in the preceding section, must be commenced within the periods and by the parties as follows:

"1. For causes mentioned in subdivision one, by the party to the marriage who was married under the age of legal consent, within four years after arriving at the age of consent, or by his or her parent or guardian at any time before such party has arrived at the age of legal consent.

"2. For causes mentioned in subdivision 2, by either party during the life of the other, or by such former husband or wife.

"3. For causes mentioned in subdivision 3, by the party injured, or a relative or guardian of the party of unsound mind at any time before the death of either party.

"4. For causes mentioned in subdivision 4, by the party injured within four years after the discovery of the facts constituting the fraud.

"5. For causes mentioned in subdivisions 5 and 6, by the injured party within four years after the marriage."

It will be observed that in the section last quoted the legislature recognized certain marriages to be void and others to be voidable only. See Mickels v. Fennell, 15 N. D. 188, 107 N. W. 53.

The various statutory provisions above quoted were in force at the time chapter 70 of the Laws of 1901 was enacted, but the legislature did not see fit expressly to declare a marriage entered into within the prescribed three-month period to be either void or subject to annulment. Marriage existed before statutes were enacted with respect thereto. It is regarded with favor by the law, and statutes should not

be construed so as to make a marriage null unless the legislative intent is clear and unequivocal. See 1 Bishop, Marr. Div. & Sep. §§ 432, 708.

Appellant has cited a number of cases wherein marriages between a divorced person and a third party, during the time prohibited by statute, have been held void, but an examination of the various authorities cited, however, show that the statutes construed were entirely different from that involved in this case. Many of the decisions were based upon and construed statutes wherein divorced parties were prohibited from contracting marriage with a third person during the time in which an appeal from the judgment might be taken. Lanham v. Lanham, 136 Wis. 360, 17 L.R.A.(N.S.) 804, 128 Am. St. Rep. 1085, 117 N. W. 787, and Wilson v. Cook, 256 Ill. 460, 43 L.R.A.(N.S.) 365, 100 N. E. 222, were based upon statutes which expressly declared a marriage contracted by a divorced person within one year after the rendition of the degree of divorce to be null and void. Re Elliott, 165 Cal. 339, 132 Pac. 439, was based upon a statute which provided that the marriage of a divorced person within a year after the rendition of the decree of divorce is "illegal and void from the beginning." McLennan v. McLennan, 31 Or. 480, 38 L.R.A. 863, 65 Am. St. Rep. 835, 50 Pac. 802; Hooper v. Hooper, 67 Or. 187, 135 Pac. 205, 525, and Wilhite v. Wilhite, 41 Kan. 154, 21 Pac. 173, were based upon a statute which provided that a divorced party shall not be *capable of contracting marriage* with a third person, and if he or she does so contract, shall be liable therefor *as if such decree had not been given,* until the suit has been heard and determined on appeal, and if no appeal be taken, the expiration of the period allowed by this Code to take such appeal." No decision has been called to our attention based upon a statute similar to that before us.

The principal purpose which actuated the different legislatures in the enactment of laws prohibiting divorced persons from remarrying with others during the time in which an appeal from the judgment might be taken was to prevent the complications which might arise from such marriage in event the decree of divorce was subsequently reversed on appeal. Obviously this purpose did not enter into or actuate the deliberations of the North Dakota legislature in the enactment of chapter 70 of the Session Laws of 1901, because at the time of the enactment of this statute an appeal from a judgment of divorce might

be taken at any time within one year after entry thereof by default, or after written notice of the entry thereof, in case the party against whom it was entered had appeared in the action (Rev. Codes 1905, § 7204, Comp. Laws 1913, § 7820), while the prohibition upon the remarriage of divorced persons was fixed at three months following the date of the rendition of the decree. Nor can we believe that the legislature intended that a marriage contracted in violation of the statute should be null and void. If it had so intended it would doubtless have so declared in express words. Whether a party who violated the statute by remarrying within the prohibited period would be subject to punishment is a matter upon which we express no opinion. See however 1 Bishop, Marr. Div. & Sep. § 708.

Some of the statutes construed in the various cases declare in terms that a marriage by a divorced person within the time in which an appeal from the judgment may be taken shall be null and void. Other statutes declare divorced persons to be incapable of contracting marriage during the prohibited period.

Manifestly, decisions based upon such statutes can furnish little or no aid in construing the statute before us. If a statute declares a marriage to be void, it is void so far as it is within legislative power to so declare. If parties are declared incapable of contracting marriage, then no valid contract can be made by them.

It has been said that the rule as to the distinction between void and voidable marriages is that certain canonical impediments render the marriage voidable, while the "civil disabilities" affecting the capacity of the parties to enter into the contract makes the contract void *ab initio*, not merely voidable; such disability does not absolve a contract already made, but they render the parties incapable of contracting at all; they do not sunder those that are joined together, but they previously hinder the junction. 44 Am. Dec. 54, note.

The North Dakota legislature had no intent to prohibit remarriage of divorced persons during the time in which an appeal from the judgment might be taken. It did not declare such parties incapable of contracting marriage, nor did it declare marriages by such parties during the proscribed period to be void.

The judgment appealed from must be affirmed. It is so ordered.

ROBINSON, J. (concurring). I have signed the opinion prepared by Mr. Justice Christianson, and concur fully therein. As the surviving wife of Plinn Woodward, the plaintiff duly applied for administration on his estate. His three children by a former marriage resist the claim and appeal from a judgment allowing it. Their claim is that the marriage between the plaintiff and their deceased father was illegal and their union adulterous, and yet under a marriage contract and a marriage right for twelve years they lived and worked together as husband and wife and saved up and earned and made the property in dispute. Now, if the wife will be deprived of her share in the property, there is manifestly something wrong with the law or the courts.

The objection to the marriage is based on chap. 70, Laws 1901. It is entitled, An act to amend a section of the Code relating to the dissolution of marriage. The only purpose of the act was to provide that neither party to a divorce may marry within three months after the decree. According to § 61 of the Constitution, the subject or purpose of every act must be expressed in its title. Otherwise, the act is void. Now the purpose of this act was to limit the time within which a party to a divorce may marry again, and that purpose is in no way expressed by the title of the act. Hence, we must hold the act void, or that its operation is harmless. It merely forbade a marriage, and did not make or declare it void. A marriage between near relations is not merely forbade; it is declared *absolutely void*. It were easy to have used this same explicit language in regard to the marriage of a divorced party, if the purpose of the legislature had been to make it *absolutely void*.

The rule is that a marriage shall not be held void unless the statute expressly declares it to be void. Where for years parties live and cohabit together as husband and wife, every marital and conjugal endearment becomes a ratification of the marriage right, and so of every day they live together as husband and wife.

Counsel for the defendant cites a Nebraska decision or *dictum* to the effect that there can be no valid marriage without the consent of the state. That is wrong. There were valid marriages and contracts to marry long before any state existed. The marriage of Adam and Eve and of Abraham, Isaac, and Jacob were perfectly valid, and yet they were not by consent of any state government. By the Catholic Church marriage is regarded as a sacrament, with which the state has no right

to interfere. The state is merely a corporation which the people make to serve their purpose, and not to obstruct their happiness or their natural rights. It has no claim to Divine right.

The effect of a judgment of divorce by a court of competent jurisdiction is to dissolve immediately the marriage contract and to leave the parties free to contract another marriage. Though for three months a marriage is forbidden, yet a marriage within that time is at most voidable. It is not declared void. It is not made a crime, and assuredly on every principle of law it may be ratified by cohabitation after the time limit. Under the present statute a decree of divorce must specify and limit the time to marry again, and any wilful disregard of the decree may be a contempt of the court, but the decree is not held up and suspended, like Mohammed's coffin, between the heavens and the earth.

Judgment affirmed.

BRUCE, Ch. J. (dissenting). I am compelled to dissent from the opinion and judgment of the majority. I am not willing to concede that it is yet the law in this country that a person can openly violate a public statute and then obtain the aid of the court to help him profit thereby. Here, the statute absolutely forbade the marriage of a divorced person within three months of the time the decree was granted. Here, the plaintiff who was a resident of the state, married the deceased within three months. After having defied the statute, she seeks the aid of the very courts she has defied, and to profit from the benefactions of inheritance laws which the bounty of the state has provided. Such a thing cannot, and should not, be done. I am fully aware of the general rule stated by Mr. Justice Christianson, that marriage is regarded with favor by the law, and statutes should not be construed so as to render a marriage void, unless the legislative intention is clear and unequivocal. This rule, however, was only made and has only been applicable for the protection of the innocent children of a marriage such as that before us. Surely it was not the intention of our legislature that the general rule, that marriages are favored, should be allowed to overcome its express statement, that a marriage within three months after a divorce should not be consummated, and to allow the guilty persons to reap rewards from their unlawful act.

The only cases, indeed, where I find the rule to have been adopted,

are cases in which the legitimacy or right of inheritance of innocent children was concerned, or the violation of the statute was not on the part of those who contracted the ceremony, but on the part of those who performed it, as, for instance, cases where minors were free to contract marriage, but the statute provided that ministers of the gospel should not solemnize such marriages without the consent of the parents. See Parton v. Hervey, 1 Gray, 119; 1 Bishop, Marr. & Div. §§ 431, 432.

Although, indeed, the majority opinion cites Mr. Bishop as authority for the proposition announced in it, Mr. Bishop takes entirely the other position. He, it is true, says, and cites authorities on the proposition, that a lack of qualification or right on the part of the minister or other official will not invalidate the marriage, but he expressly adds: "On the other hand, if the same statute which authorized the divorce provided that it should not operate to enable the divorced party to remarry, the case would seem to be that stated in the last section, and a new marriage in the same state would be void; though it would be good if contracted in another state or country,—the inhibition not being extraterritorial." See vol. 1, § 708. See also Dickson v. Dickson, 1 Yerg. 110–114, 24 Am. Dec. 444; Ponsford v. Johnson, 2 Blatchf. 51, Fed. Cas. No. 11,266; Re Webb, Tucker, 372; Thompson v. Thompson, 114 Mass. 566.

Even in § 707, referred to, he says: "But a statute conferring a capacity to marry, where it did not before exist, is to be rendered differently from one directing how an already existing right to marry shall be exercised; the terms of the capacitating provision furnish the measure of the right. Thus, a divorce statute having declared that 'where a marriage is absolutely annulled, the parties shall severally be at liberty to marry again, but a defendant who has been guilty of adultery shall not marry the person with whom the crime was committed during the life of the former husband or wife,' a marriage violative of the inhibiting clause was adjudged void; for all the parts of a law must be interpreted together."

The language used in the case cited by Mr. Bishop, indeed (Owen v. Bracket, 7 Lea, 448), is very suggestive; and answers well the argument of the majority opinion that there is a public policy superior to the public policy announced by the statute which forbids such marriages,

38 N. D.—4.

and which alleged rule of public policy, the majority hold, seeks to favor practically all marriages. "The statute," the Tennessee court says, "is plain and has been the law of this state since 1835. We are unable to appreciate the argument that 'the statute is opposed to public policy, is utterly void and in violation of common sense and the propagation of the human race.' We are of opinion it accords wih public policy, is predicated of common sense, and tends to assure a decent propagation of the human race."

The case was one very similar to that before us, and was one in which the alleged husband and wife claimed a homestead interest in a tract of land which had been levied upon in payment of a debt. The statute prohibited a defendant who had been guilty of adultery from marrying the person with whom the crime had been committed during the life of the former husband or wife, and the alleged marriage had taken place after a divorce between the first parties.

The rule, indeed, which makes the courts hesitant in setting aside and ignoring marriages has only, as a general rule, been recognized where the rights of innocent children have been involved, and I find no case where a party who has himself defied a statute has been allowed to go into the courts of the state where the act of defiance was committed and seek through it to profit thereby.

I am not even willing to concede that a marriage, even though solemnized in another state, but which was solemnized in defiance of the statute of North Dakota, would furnish a basis for the right to inherit in this state. I agree with the supreme court of Wisconsin, "that the statute under consideration is in no sense a penal law. It imposes a restriction upon the remarriage of both parties, whether innocent or guilty. Upon no reasonable ground can this general restriction be explained, except upon the ground that the legislature deemed that it was against public policy and good morals that divorced persons should be at liberty to immediately contract new marriages. The inference is unmistakable that the legislature recognized the fact that the sacredness of marriage and the stability of the marriage tie lie at the very foundation of Christian civilization and social order; that divorce, while at times necessary, should not be made easy, nor should inducement be held out to procure it; that one of the frequent causes of marital disagreement and divorce actions is the desire on the part

of one of the parties to marry another; that if there be liberty to immediately remarry, an inducement is thus offered to those who have become tired of one union, not only to become faithless to their marriage vows, but to collusively procure the severance of that union, under the forms of law, for the purpose of experimenting with another partner, and perhaps yet another, thus accomplishing what may be called progressive polygamy; and, finally, that this means destruction of the home and debasement of public morals. In a word, the intent of the law plainly is to remove one of the most frequent inducing causes for the bringing of divorce actions. This means a declaration of public policy or it means nothing. It means that the legislature regarded frequent and easy divorce as against good morals; and that it proposed not to punish the guilty party, but to remove an inducement to frequent divorce." See Lanham v. Lanham, 136 Wis. 360, 17 L.R.A.(N.S.) 804, 128 Am. St. Rep. 1085, 117 N. W. 787. See also opinion of Chief Justice Dunn in Wilson v. Cook, 256 Ill. 460, 43 L.R.A.(N.S.) 365, 100 N. E. 222.

I see nothing in the contention of respondent and in the contention of the majority opinion that there is no express provision of the statute which declares such marriages to be void. There is much, too, in the view taken by the supreme court of Washington in the case of Re Smith, 4 Wash. 702, 17 L.R.A. 573, 30 Pac. 1059, and that is, that "if the provision is to have any force, it seems to us it must limit the preceding part of the section, and the divorce cannot be held to be full and complete until the time mentioned in the provision has expired. It is full and complete for all purposes, excepting neither party shall enter into a marriage with any other person during the time specified, and it must be a limitation upon it in that respect. During this time, for this purpose, the decree of divorce is suspended and inoperative to that extent." Nor does the fact that after the three months' period the parties live and cohabit with one another make any difference, as common-law marriages are not recognized in North Dakota. See Schumacher v. Great Northern R. Co. 23 N. D. 231, 136 N. W. 85.

This fact serves to differentiate many of the cases cited by respondent, if differentiation is necessary. See also opinion of Chief Justice Dunn in Wilson v. Cook, supra.

Even if an expression of invalidity were necessary, which I do not

believe it to be, the North Dakota statute expressly declares illegal and void from the beginning, any marriage contracted by a person having a former husband or wife living, where the former marriage has not been annulled or dissolved. See § 4360 of the Compiled Laws of 1913. In my opinion and in the opinion of the Washington court, the decree as to a dissolution of the marriage bonds, as far as remarriage was concerned, was not operative until the expiration of the three months' period.

I am firmly of the opinion that the judgment of the district court should be reversed. It is also needless to say that I strenuously dissent from the theory of marriage and the public policy in relation thereto which is announced by Mr. Justice Robinson. It is to be remembered that this is not a case where the innocent children of the second marriage are seeking protection, but where the guilty parties themselves are alone involved.