## FANNIE CHUNG JAY *v.* JAMES FONG JAY.

### No. 2575.

ARGUED OCTOBER 23, 1944.  DECIDED DECEMBER 19, 1944.

KEMP, C. J., PETERS AND LE BARON, JJ.

OPINION OF THE COURT BY LE BARON, J.

This is an appeal by the father of a minor child from an order amending a decree of absolute divorce relative to the child's custody which the decree had awarded to both parents for alternate equal periods. The amending order resulted from a hearing at which two motions were consolidated, one being filed by each parent and both praying for exclusive custody. It placed custody in the mother with right of visitation in the father.

The appeal presents the question whether, after paramount consideration has been given to the welfare of the child, a boy of about six years, the evidence is sufficient to support the order of amendment.

Briefly, the record shows that the father since the granting of the decree lived alone in a one-bedroom house and during his alternate custody took care of the child on weekdays from late afternoon to early morning; that no meals were prepared or served in this house, the father having his breakfast and lunch downtown; that around seven in the morning he took the child across the street to the home of a niece, leaving him there for breakfast, the niece taking the child to school, calling for him at about two in the afternoon and caring for him until the father returned from work two hours later; that the father then took charge of the child, accompanying him to evening meals at another niece's home in the neighborhood and returning with him to his own house where they both slept at night. In contrast, it shows that the mother after the

granting of the decree lived with her sister until she (the mother) remarried about six weeks later; that thereafter she lived with her new husband in a three-bedroom house wherein as a housewife she prepared the meals; that when she had custody she personally took care of the child, taking him herself to and from school; that her second husband earned between $60 and $80 a week as compared to $218 a month by the child's father.

In view of these contrasting situations, it is apparent that there is ample evidence to warrant the granting of the mother's motion and sufficient to justify a finding that she is a fit and proper person to have sole custody; that a beneficial change occurred in her circumstances and none in the father's from those existing at the time of the decretal award; that the interests of the child in respect to his temporal, mental and moral welfare would be best served by extending the mother's custody, rather than that of the father or allowing it to remain a divided one, regardless of the father's good character and fitness. Further, the record reveals that the trial judge was guided primarily by what appeared to be for the best interests and welfare of the child, and that the general atmosphere of the home in which the child would be reared by the mother is advantageous to the child's betterment, notwithstanding the contention of the father to the contrary. (See *Fernandes* v. *Fernandes*, 32 Haw. 608; *Robello* v. *Robello*, 33 Haw. 90; *Dela Cruz* v. *Dela Cruz*, 35 Haw. 95; *Re Thompson Minor*, 32 Haw. 479.) The amending order therefore should be affirmed unless, as argued by the father, the mother nevertheless is morally disqualified as a custodial parent.

The father points to evidence which he claims tends to establish an adulterous relationship between the mother and her second husband before marriage. In our opinion, the record does not disclose satisfactory proof of any

meretricious relationship, but assuming *arguendo* that it does, the effect thereof upon the mother's moral fitness would be superseded by that of the honorable estate in which the culminating marriage placed her in vindication of the prenuptial, there being no evidence to show otherwise. (See *Dela Cruz* v. *Dela Cruz, supra.*)

In further pursuance of his argument, the father contends that such disqualification is evidenced by the mother's act of remarrying and continued cohabitation thereafter with her second husband, pointing to the fact that she appealed from the decree of divorce and remarried during its pendency. This contention he attempts to uphold by questioning the validity of the remarriage. He asserts that it was void *ab initio* and the cohabitation bigamous on the ground that, the appeal having suspended the operation of the decree, he (the father) and she were legally husband and wife at the time she remarried. In short, he argues that the decree had no binding force at law as a divorce during pendency of the appeal, the validity of the remarriage being inseparably bound to the legal efficacy of the decree. However, to complete the record, attention is drawn to the fact that the mother withdrew her appeal eleven days after the remarriage and approximately two months before the filing of the motions to amend. Such being the case, the withdrawal not only terminated the appellate proceedings and restored the lower court's jurisdiction but also removed the appeal's suspensive effect from the decree and operated instantly as a matter of law to vacate the appeal as far as the decree and rights of the parties were concerned precisely as though no appeal had been taken, there being an absence of statute to the contrary in this territory. (Compare *Hart* v: *Minneapolis St. P. & S. Ste. M. R. Co.*, 122 Wis. 308, 99 N. W. 1019, 2 Ann. Cas. 793.) Hence the remarriage made subsequent to the decree likewise stands in the eyes of the law exactly as if

38

there had been no appeal. It is therefore completely valid and sufficient in point of law.

No more need be said concerning the validity of the mother's remarriage and it is not necessary to determine intermediate questions pertinent to the pendency of the appeal, its vacation having rendered them moot. Nevertheless, by way of answer to contentions of the father and to allay the apparent confusion of law contained therein, it may be stated with propriety that the appeal operated merely as a supersedeas of the decree, suspending the authority of the trial judge to enforce it during pendency and forestalling further proceedings below in connection therewith until the return of the mandate or termination of appellate proceedings by withdrawal or dismissal (see R. L. H. 1935, § 3504; *Collection Corp.* v. *Anami*, 33 Haw. 911; *Slaughter-House Cases*, 77 U. S. 273 [Wall.], 19 L. ed. 915), and did not affect matters distinct from measures in the lower court and apart from the suit itself (see *Natal* v. *Louisiana*, 123 U. S. 516, 31 L. ed. 233; 3 Am. Jur. § 543, p. 199), nor prevent either party from remarrying in the exercise of their individual right as divorced persons to do so, the appeal not vacating or annulling the decree and the decree remaining binding upon the parties and in force throughout pendency subject only to the latent possibility of an ultimate appellate reversal (see *Bertelmann* v. *Kaio*, 23 Haw. 646; *Collins* v. *Ako*, 35 Haw. 440), which in this case never materialized.

We are not unmindful of the serious complications which might arise in the event the decree is reversed after one or both of the parties have remarried. Notwithstanding that this may happen in an appeal from a decree of divorce, the legislature to date has not placed any restraint whatsoever upon the parties in respect thereto nor established by implication or otherwise any diriment impediment during pendency upon their capacity of divorced

persons to remarry, there being no statute in this juris-
diction expressly prohibiting such a remarriage, none pro-
viding a penalty for it, none declaring it void, none pro-
viding a method by which such *per se* may be declared void,
and none declaring that it or cohabitation thereafter shall
constitute the crime of bigamy or polygamy. Hence even
had the question been properly presented in a direct pro-
ceeding brought for that object, the remarriage would be
incapable of being rightfully overthrown or set aside so
long as the decree remained unreversed, and *a fortiori*
would not be void nor the attendant cohabitation bigamous,
the general rule being that marriages are favored by the
law and no statute should be construed as rendering any
marriage invalid, void, or cohabitation pursuant to it
meretricious or criminal unless the legislative intent there-
in to do so is clear and unequivocal. (See *Woodward* v.
*Blake*, 38 N. D. 38, 164 N. W. 156, L. R. A. 1918A 88.)

No useful purpose would be served by pursuing this
field of inquiry further except perhaps to note that the
mother took an appeal which involved no property right
but merely a once existing marital status. Therefore the
exercise of her right to remarry and the resultant marriage
in creating a new marital status evidenced a repudiation,
abandonment and waiver of the appeal as well as an ac-
ceptance of the decree's benefit and an admission of its
legality and correctness, which unquestionably would have
estopped her from prosecuting the appeal and constituted
grounds of dismissal had the matter been presented to the
appellate court and dismissal not have been obviated by her
voluntary act of withdrawal. (See *Stephens* v. *Stephens*,
51 Ind. 542; *Stebe* v. *Stebe*, 163 Mich. 650, 129 N. W. 356;
*Swisher* v. *Swisher*, 42 Ohio App. 52, 181 N. E. 917; *Mosier*
v. *Mosier*, 121 Okla. 4, 246 Pac. 1099.)

The mother's remarriage and subsequent cohabitation
with her second husband therefore constitute a boon to

the right of custody rather than a forfeiture thereof, there being nothing in the surrounding circumstances that would indicate any moral turpitude whatsoever or reflect in the slightest degree any militation against the child's best interests and welfare. Consequently the argument of moral disqualification is without merit.

The order appealed from is affirmed.

*A. G. M. Robertson* (*Robertson, Castle & Anthony* on the briefs) for (cross libelant) appellant.

*C. B. Dwight* (also on the briefs) for (cross libelee) appellee.

CONCURRING OPINION OF PETERS, J.

I concur in the result.