## JUANITA DACOSCOS v. SALVADOR DACOSCOS.

## No. 2703.

SUBMITTED NOVEMBER 4, 1948.　　　DECIDED NOVEMBER 16, 1948.

KEMP, C. J., LE BARON, J., AND CIRCUIT JUDGE
WIRTZ IN PLACE OF PETERS, J., ABSENT.

OPINION OF THE COURT BY LE BARON, J.

The appellant in this case is the divorced wife of the appellee. Her appeal is from an order of the circuit judge at chambers amending an amended decree of absolute divorce relative to the custody of the three minor children of the parties. The decree on April 6, 1940, awarded custody to the appellee, but it was amended on March 11, 1941, by changing custody to the appellant. The amending order appealed from, which replaced custody in the appellee with right of visitation in the appellant, was entered on February 6, 1948. For convenience the appellant is hereinafter referred to as the "mother" and the appellee as "father."

The appeal presents but one question, which involves the custody of the children, all girls of the respective ages of twelve, ten and nine years, who, though presently in custody of the mother, have been placed by the father with her knowledge and consent in an orphanage where they have continuously remained. The question presented is whether or not the evidence is sufficient as a matter of law to support the order of amendment changing the custody from the mother to the father.

No useful purpose would be served to set forth at length the evidence, adduced at the hearing on the father's motion, which in the main is undisputed. This court is primarily concerned with any change of circumstances of the parties since March 11, 1941, when the decree was first amended in favor of the mother, custody having been denied her upon the granting of the divorce. Its problem is to ascertain whether there occurred such a change of circumstances that the replacement of custody in the father would be for the best interests of the children.

The circumstances of the parties since that date underwent no appreciable change relative to their material affairs other than that the mother acquired by purchase a two-bedroom home and the father obligated himself to pay the orphanage for the care and maintenance of the children. They both have continued in the same occupations they had before the divorce, the mother at night as a taxi dancer and the father by day as a steady employee of a commercial establishment and at night once or twice a week as a member of a band. But a substantial change of circumstances does appear to have occurred in the personal affairs of both parties.

The mother married again and two children are the issue of her second marriage. However, she divorced the father of these children. Subsequently she bore an illegitimate child of a paramour and continues to entertain that

child's father. These three children live in the mother's home and make a total of six minor children when those of the appellee are in her actual custody. The mother's occupation prevents her from caring for the children from early evenings extending into late hours of the night and into the next morning. This necessitates the children's maternal grandmother to return from her place of business several miles away to the mother's home in order to care for the children. The maternal grandmother and grandfather also live in the mother's home, which creates a maximum number of nine persons occupying a two-bedroom house. On returning from work the mother frequently has visitors including patrons of the dance floor.

The father also married again. He lives happily with his new wife in a two-bedroom home. She is willing and able to have the children live in their home and to give them proper care and supervision. Out of his total net earnings of about $215 a month, the father pays $120 to the orphanage for the care and maintenance of the children, which obviously is a continuing hardship.

Without more, it is patent from the contrasting circumstances of the parties that the general atmosphere of the home in which the children would be reared by the father is more advantageous to their betterment than the congested home of the mother, as well as evident that the father is more suitable to have custody and is of greater moral fitness to rear the children than the mother. This is evinced by the fact that the changed circumstances of the father are advantageous to his prospective custody, while those of the mother have so deteriorated that it does not appear with any degree of reason to be more beneficial for any of the children to remain in her custody.

The primary right to custody of children is in the father. But this right is not absolute. It is subject to the general rule that the welfare of the child has paramount

consideration. (*In re Muranaka*, 26 Haw. 465; *Wong* v. *Wong*, 27 Haw. 742.) Pursuant to that rule this court consistently has given preference over the father in favor of the mother where her custody appears more beneficial to the child. (*Re Thompson Minor*, 32 Haw. 479; *Fernandes* v. *Fernandes*, 32 Haw. 608; *Robello* v. *Robello*, 33 Haw. 90; *Dela Cruz* v. *Dela Cruz*, 35 Haw. 95; *Jay* v. *Jay*, 37 Haw. 34.) However, pursuant to the rule, the father's primary right to custody must be upheld where, as here, the mother's custody does not so appear.

The question presented is answered in the affirmative and the order appealed from affirmed.

*Fong, Miho & Choy* for appellant.

*W. Wight* for appellee.