## CHARLES GERALD'S CASE.

Suffolk.     November 14, 1923. — January 3, 1924.

Present: RUGG, C.J., CROSBY, PIERCE, & CARROLL, JJ.

*Workmen's Compensation Act*, Injuries to which act applies; Procedure: notice. *Proximate Cause.*

At the hearing of a claim under the workmen's compensation act for total incapacity alleged to have been caused by lead poisoning, there was evidence tending to show that the employee was a painter who had been employed for twelve years; that on February 13, 1922, he began to feel numb in his left hand, and in the afternoon his fingers began to straighten out and his hand dropped from the wrist so that he had no control over his hands; that he went home, called his family physician, and remained in bed for six weeks; that he had been using lead paint, and, on February 13, was washing heavy plates in a shipyard with turpentine to remove red lead. His physician testified that he saw him on February 13 and 14, and found him suffering from pain and paralysis of the arm; that he had Bright's disease " caused by lead; " that in his opinion " the cause of his trouble . . . was lead poisoning." There was other evidence to the effect that the employee was suffering from lead poisoning. The insurer introduced evidence tending to show that the employee was incapacitated from aortic aneurism which was not caused by exposure to lead. *Held*, that a finding was warranted that the cause of the incapacity was lead poisoning and that the employee remained totally incapacitated as a result of the lead poisoning.

At the hearing of the claim above described, it appeared that the employee gave no notice to the employer of the time, place and cause of the injury, and that the insurer had no knowledge thereof at the time; that the insurer's medical advisor examined the employee on March 13, 1922, and then received from him a history of the case; that he saw him again in the following June or July, was informed that the employee's family physician was attending him, but made no effort to see the family physician. *Held*, that a finding was warranted that the insurer was not prejudiced by want of notice.

CERTIFICATION to the Superior Court under the provisions of the workmen's compensation act of a decision of the Industrial Accident Board upon a claim by Charles Gerald, an employee of Bethlehem Shipbuilding Corporation, affirming and adopting findings by a single member of the board, described in the opinion, awarding compensation to the employee for total incapacity from February 23, 1922,

at the rate of $16 per week to continue subject to the provisions of the workmen's compensation act.

In the Superior Court the case was heard by *McLaughlin*, J., by whose order a decree was entered for the claimant. The insurer appealed.

*L. Brown*, (*E. Field* with him,) for the insurer.

*G. W. Abele*, for the employee.

CARROLL, J. The Industrial Accident Board found that the employee received personal injury arising out of and in the course of his employment, by lead poisoning. It was also found that the insurer was not prejudiced by reason of the want of notice of the employee's injury. The insurer contends that there was no evidence to sustain these findings.

The employee was a painter and had been so employed at the Fore River shipyard for twelve years. On the morning of February 13, 1922, according to his testimony, he began to feel numb in his left hand; in the afternoon his fingers began to straighten out, his hand dropped from the wrist, he had no control over his hand. He went to his home and called his family physician, and he remained in bed six weeks. He further testified that prior to February 13, " he had pain in his hands when he was painting at times; sometimes a finger would get kind of stiff." At the time of the hearing he complained that he could not lift his left arm and that the fingers were numb. Before he ceased working, he had been using lead paint, and on February 13 he was washing heavy plates with turpentine to remove the red lead.

The employee's physician testified, that he saw the patient February 13 or February 14 and found him suffering from pain and paralysis of the arm; that he had Bright's disease " caused by lead;" that in his opinion " the cause of his trouble . . . was lead poisoning;" that he had no history of alcoholism, syphilis or rheumatism, and that the wrist drop and other symptoms were attributable to lead poisoning. There was additional evidence to the effect that the employee was suffering from lead poisoning. This evidence was contradicted and expert testimony was introduced tending to show that the employee was incapacitated from an aortic

aneurism which was not caused by exposure to lead. The Industrial Accident Board could have found on all the evidence that the insurer's defence was established. The question, however, was one of fact, and if the board believed the employee and his witnesses they could have found, as they did, that the cause of the incapacity was lead poisoning; that he remained totally incapacitated as a result of the poisoning. There was evidence to support this conclusion and we see no error of law in the finding.

Was there any evidence to sustain the finding that the insurer was not prejudiced by the want of notice of the employee's injury? No notice was given the employer of the time, place and cause of the injury. Nor did the insurer have knowledge of an injury. Dr. Hickey, the medical advisor of the insurer, examined the employee on March 13, 1922, and received from him a history of the case. Dr. Hickey was told that on February 13 the employee, while at work "red leading, painting plates," began to feel that his left hand was tired; that " About 3 P.M. his hand began to drop from the wrist and he dropped his kit and his turpentine twice on the way to the boat;" that his physician was called that evening, and later examined his urine and found albumin, which had not disappeared. Dr. Hickey saw the employee again in June or July, 1922, and received a sample of his urine. He testified that " He examined this employee March 13, 1922, about a month after it happened. Employee had worked at Fore River for twelve years painting;" that he was informed that Dr. Pease, the employee's family physician, was attending him, but he (the witness) made no effort to see Dr. Pease. Dr. Hickey further testified that in March there was no " wrist drop " and that the employee then told him "there was no wrist drop now;" that wrist drop is a symptom of lead poisoning; that the employee had suffered from an attack of acute nephritis from which he has recovered; that " while he has pain and slight degree of wrist drop he has no further symptoms which indicate lead poisoning;" that nephritis may result from age and may result from lead poisoning.

In our opinion there was evidence to support the finding

that the insurer was not prejudiced by the want of notice. Its medical advisor saw the injured man and, according to the record, was given all the information he desired. He knew that the employee was a painter, employed at the Fore River shipyard for twelve years; that he left his work on February 13, when "red leading;" that his hand began to drop from the wrist and he was unable to carry his kit of tools; that he knew wrist drop is associated with lead poisoning; that while he thought the patient was suffering from nephritis, he admitted that this disease might result from lead poisoning. It could have been found on this evidence and the reasonable inferences to be drawn from it, that the insurer was not embarrassed in its defence or in any way prevented from making all the examination it wished. *Sullivan's Case*, 241 Mass. 36. There was some evidence that the insurer was not prejudiced by the failure to give the notice required by statute; we cannot disturb this finding.

*Decree affirmed.*