GEORGE BREAULT'S CASE.

Suffolk.    November 15, 1929. — January 29, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Workmen's Compensation Act,* Injuries to which act applies, Findings by Industrial Accident Board.    *Proximate Cause.*

Although, at the hearing by the Industrial Accident Board of a claim under the workmen's compensation act by one who had worked as a painter for various persons for nine years and had been employed as such by the subscriber for about eight weeks before he was forced to cease work by the condition of his health, evidence of symptoms manifested by the employee for several years warranted a finding by the board that he had suffered an injury through lead poisoning, there was no evidence that any paint or any painting compound used by him while he was in the employ of the subscriber contained lead or other harmful substance, and it was *held,* that findings by the board that the date of his injury was the date upon which he was compelled to cease work and that the injury arose out of his employment by the subscriber were not warranted; and a decree awarding compensation in accordance with the board's decision was reversed.

CERTIFICATION to the Superior Court under the provisions of the workmen's compensation act, of a decision by the Industrial Accident Board allowing a claim by George Breault for compensation for lead poisoning alleged to have occurred "between May and July, 1928," while he was in the employ of Harold J. Beaudette.

Material evidence heard by a single member of the Board is stated in the opinion. The single member found that it was not proved that the "employee's condition arose from and was the result of his employment with this employer." The Board in review made findings in the employee's favor, as stated in the opinion. In the Superior Court a decree was

entered by order of *Lummus*, J., in accordance with the Board's decision. The insurer appealed.

*P. L. Keenan*, for the insurer.

*J. Y. Young*, for the claimant.

PIERCE, J.   This is an appeal by the insurer from a decree of the Superior Court confirming an award of compensation made to the employee by the Industrial Accident Board. The employee claimed, and the Industrial Accident Board in review of a decision of a single member of that board found "upon all the evidence, that the employee received a personal injury arising out of and in the course of his employment; that the injury was due to lead poisoning resulting from employee's work as a painter for the subscriber; and that the date of the employee's injury is July 18, 1928, the date upon which he last was able to work and toward the latter part of which day he was obliged to leave his work, due to the effects of lead poisoning." The only issue presented to this court for determination is whether there was any evidence which would warrant the finding of the Industrial Accident Board.

The employee was thirty-eight years of age and generally weighed between one hundred and sixty-five and one hundred and sixty-eight pounds. He testified in substance as follows: He had been a painter for nine years. When he began work as a painter his health was good. For seven or eight weeks prior to July 18, 1928, he had been working for the subscriber "at Salisbury Gabel on a Modern Home." The first couple of weeks he was putting some kind of glaze on the walls and was finishing some new floors. He did some sandpapering on the floors, which were sandpapered before they were painted at all, and between each coat. The woodwork was sandpapered first. He started to work in the cellar of the "Modern Home" and "while working in that house he mixed paints and did sandpapering." He was sick about two weeks before July 18, 1928; he worked the day through but did not work for one week after that day; he then came back and worked two weeks more up to July 18. During the years he was a painter, in connection with his work he "mixed his own paints largely and he has done quite

a little sandpapering to remove old paint." He always took his lunch with him and ate it from a lunch box. He generally wiped his hands with a clean cloth, and if he had a little linseed oil he used that. Sometimes he "ate without washing his hands when they were not too dirty." Before going to work for the subscriber he worked for one Johansen about a year, and before that for one DeLude doing the same kind of work for about three months. Before that time he worked in Boston for probably five or six weeks. During the nine years he worked as a painter he had cramps in the stomach quite a number of times at night; they would last only for one night and sometimes he would feel them in the morning. These were shooting pains and were bad enough to wake him up; he would have to turn from one side to the other and would not get relief until he went to the lavatory. For the last two or three years he has had heart burn and his food does not seem to digest well. "His appetite was good but lately it seemed to get worse." Within the last year or so some days on the job he would feel like vomiting but he would not; and he would feel sick but a few minutes afterwards he could eat a great deal. At lunch time, sometimes, "he could not eat and he would drink a pint of milk and let it go." These conditions continued down to July 18, 1928. Before that date, when he would be working, some days his arm and hand would feel tired; after a while the brush would seem too heavy for him and his wrist would drop and he would have to take the brush in the other hand; he would work with that hand until the same thing happened. He had this trouble often when he worked for Johansen. He suffered with headache, beginning a few years ago. "A number of times he would have a headache when he got up in the morning, eat his breakfast and go to work; then it would kind of work off but along toward the afternoon it would come back again." Sometimes he would go without having a headache for a week. "Within the last year or so the headache seemed to keep coming worse"; he kept a box of aspirin in his pocket which seemed to help him. "He had a taste in his mouth, especially in the morning or when he got out in the air after getting through work; he then

noticed the taste in his mouth like paint." In the spring of 1928 he "was sick to his stomach" and "it seemed as though he had paint in his mouth all the time"; he said he might have had the taste before but noticed it more then. On a Saturday in the spring of 1928, while working for Johansen he had such cramps in the stomach that he could not work and came home, and all day long he was vomiting and going to the lavatory. About three years ago he would get dizzy and something would come over his eyes when he stooped, he would lose his balance if he did not watch out; and he was walking one night and "all at once he kept going to the left all the time." He went to a doctor who examined his eyes and gave him some medicine; "this helped a little but he always felt this dizziness afterwards a little; it would be worse some weeks than others. This walking to the left lasted probably four, five or six weeks; it was not as bad since then up to when he was sick; just before he was sick he would take a step out when he was walking to try to balance himself; that tendency was mostly to the left." He had had dizziness for two years at least; it stopped except when he stooped down or got up; "it seemed to be more, especially if he looked up and turned when he was talking; if he kept sideways he would lose his balance like. He is not that way now. . . . It stopped . . . just before he was taken sick in July." In the spring of 1928, spots would come over his eyes when he was working. When he was working in the "Modern Home" he first noticed that the work would be too close, or it seemed to be too close. His eyes would feel tired and there seemed to be "something drawing them together at the side of his nose"; and the wall he was working on seemed to be moving. His sleep has not been good. On July 18, 1928, when he got up in the morning he "did not feel very good" but "went to work and there was nothing much unusual." As before stated, he remained away from work one week, then returned to work for two weeks until July 18, 1928; he thinks he did work a couple of weeks after that; then was away from work until about the second week of September, 1928, when he went back to work, worked a day and a half, and

did not work longer because he could not stand on his feet and his ankles began to swell. Since September, 1928, he has never been able to return to his work with the subscriber nor to perform work elsewhere.

There is no evidence in the record that any paint or any painting compound used by the employee contained lead or other harmful substance while he was in the employment of the subscriber. The testimony of the physician (Fossner) that the description of the employee's symptoms during the three years last past indicated lead poisoning, justified, if believed, the finding of the board of review that the injury of the employee was due to lead poisoning, but afforded on the evidence no basis for its further finding that "the date of the employee's injury is July 18, 1928." There is no evidence in the case that the alleged lead poisoning of the employee was due directly or indirectly to his employment with the subscriber. It is elementary that the evidence must prove that the accident arose out of, as well as in the course of, the employment. We find no causal relation between the injury of the employee and the nature of his employment. *Sanderson's Case,* 224 Mass. 558. *Green's Case,* 266 Mass. 355. *Herlihy's Case,* 267 Mass. 232.

It follows that the decree must be reversed and a decree entered for the insurer.

*So ordered.*