HILDA G. WHEELOCK *v.* HARRY C. WHEELOCK.

February Term, 1931.

Present: POWERS, C. J., SLACK, MOULTON, and THOMPSON, JJ.

Opinion filed May 5, 1931.

*Wm. R. McFeeters* for the libelant.

*Theo. E. Hopkins* for the libelee.

THOMPSON, J. This is a libel for a divorce. The parties filed an agreed statement of facts, the substance of which is as follows: At the March Term, 1917, of Chittenden county court, a divorce was granted to Mabelle C. Wheelock, a former wife of the libelee, from him, the decree being dated May 22, 1917. The marriage of the parties in the instant case, specified and relied upon in the libel, was contracted in the city of New York on June 10, 1918. This marriage was contracted by both parties in good faith, but they knew at the time that they could not be legally married in Vermont. The libelee resided in Burlington, Vt., at the time of the marriage in New York, and intended to return and continue to reside there. Immediately after the marriage the parties returned to Burlington and resided there and lived together as husband and wife until November 12, 1929. Said Mabelle C. Wheelock was living at the time of the New York marriage, and said decree of divorce was then in force.

It is further agreed that at the time of the New York marriage, the marriage in Vermont of the libelee to any person other than the said Mabelle C. Wheelock, within three years after the date of said decree, was prohibited under the laws of this State, and under the provisions of G. L. 3514.

The libelee filed a motion to dismiss the libel on the ground that under these facts the New York marriage is null and void for all purposes in this State with the same effect as though such prohibited marriage had been entered into in this State, by reason of the provisions of G. L. 3514. The motion was granted, the libel was dismissed, and the libelant took and was allowed an exception.

G. L. 3602, in force at the times of the divorce and of the New York marriage, provides that when a divorce is granted, the parties shall be deemed single and may lawfully marry again; "but it shall not be lawful for the libelee to marry a person other than the libelant for three years from the time such divorce is granted, unless the libelant dies." G. L. 3603 provides that a person who violates a provision of G. L. 3602, or lives in this State under a marriage relation forbidden by such section, shall be imprisoned in the State prison.

G. L. 3514 provides: "If a person residing and intending to continue to reside in this state, who is prohibited from contracting marriage under the laws of this state, goes into another state or country and there contracts a marriage prohibited and declared void by the laws of this state, such marriage shall be null and void for all purposes in this state, with the same effect as though such prohibited marriage had been entered into in this state."

G. L. 3514 was section 1 of Act No. 110 of the Laws of 1912, which is entitled "An Act To Prevent The Evasion of Laws Prohibiting Marriage." Other sections of the Act are now G. L. 3515 and G. L. 3794. It is the work of the Commissioners on Uniform State Laws, and has been adopted by several states.

Prior to the enactment of G. L. 3514 our only prohibition of the remarriage of persons divorced was found in what is now the provisions of G. L. 3602. They have been construed by this Court several times, and it has been held that the marriage of the libelee in this State in violation of the provisions of this statute is null and void. *Ovitt* v. *Smith,* 68 Vt. 35, 33 Atl. 769, 35 L. R. A. 223; *State* v. *Sartwell,* 81 Vt. 22, 69 Atl. 151, 130 A. S. R. 1017. But it has also been held that the statute as framed has no extraterritorial force, and that the marriage of the libelee to a person other than the libelant within the prohibited time in another state where the marriage is valid, is valid in this State, following the general rule that a marriage valid where it is celebrated is valid everywhere. *State* v. *Shattuck,* 69 Vt. 403, 38 Atl. 81, 40 L. R. A. 428, 60 A. S. R. 936; *State* v. *Richardson,* 72 Vt. 49, 47 Atl. 103; *State* v. *Bentley,* 75 Vt. 163, 53 Atl. 1068; *Patterson's Admr.* v. *M. W. A.,* 89 Vt. 305, 316, 95 Atl. 692.

To the general rule, however, there are two general exceptions which are well recognized, *viz.:* (1) Marriages which are deemed contrary to the law of nature as generally recognized by Christian civilized states; and (2) marriages which the law-making power of the forum has declared shall not be allowed validity on grounds of public policy. The question presented is whether the case comes within the second exception.

A state undoubtedly has the power to declare what marriages by its citizens shall not be recognized as valid in its courts, and it also has the power to declare what marriages by its citizens contrary to its established public policy shall have

no validity in its courts, though they be celebrated in other states under whose laws they would ordinarily be valid. See cases collected in annotations, 32 A. L. R. 1116, and 51 A. L. R. 325; Marriage and the Domicile, 44 Harv. L. Rev. 501. This rule is recognized in *State* v. *Shattuck, supra,* decided in 1897, where it is held that, to render a marriage in another state of a citizen of this State who is within the inhibition of the statute void in this State, there must be an express statutory provision to that effect.

It is uniformly held that when persons domiciled in a state, and who are subject to the provisions of its statute law prohibiting and declaring void a marriage between them, leave the state for the express purpose of evading those provisions, and go through the ceremony of marriage in another state and return to their domicile, such marriage is within the provisions of the law, and will not be recognized by the courts of the domicile. *Wilson* v. *Cook,* 256 Ill. 460, 100 N. E. 222, 43 L. R. A. (N. S.) 365; *In re Stull's Estate,* 183 Pa. 625, 39 Atl. 16, 39 L. R. A. 539, 63 A. S. R. 776; *Pierce* v. *Pierce,* 58 Wash. 622, 109 Pac. 45; *Knoll* v. *Knoll,* 104 Wash. 110, 176 Pa. 22, 11 A. S. R. 1391; *Stevens* v. *Stevens,* 304 Ill. 297, 136 N. E. 785; *Lanham* v. *Lanham,* 136 Wis. 360, 117 N. W. 787, 17 L. R. A. (N. S.) 804, 128 A. S. R. 1085.

It is conceded that the libelee was prohibited from contracting a marriage under the laws of this State when the marriage in question was solemnized in the state of New York, and that both parties knew that fact; and it cannot be disputed that he went from this State into another state and there contracted a marriage which would have been null and void if it had been entered into in this State. It is also conceded that he resided in this State at the time of the marriage in New York, and intended to, and did, return and continue to reside in this State.

The intention of the Legislature to make null and void for all purposes a marriage contracted under circumstances similar to those in this case is made plain by the fact that the provisions of G. L. 3514 are applicable, if either of the contracting parties "residing and intending to continue to reside in this State" goes into another state with intent to evade the provisions of the marriage laws of this State. *Murphy* v. *Murphy,* 249 Mass. 552, 144 N. E. 394; *Witherington* v. *Eldredge,* 264 Mass. 166, 162 N. E. 300; *Wright* v. *Wright,* 264 Mass. 453, 162 N. E. 894;

*Hall* v. *Industrial Commission,* 165 Wis. 364, 162 N. W. 312, L. R. A. 1917D, 829; *Meisenhelder* v. *Chicago & N. W. Ry. Co.,* 170 Minn. 317, 213 N. W. 32, 51 A. L. R. 1408; *Weinberg* v. *Weinberg,* 242 Ill. App. 414.

The court below committed no error in refusing to recognize the marriage in question and in dismissing the libelant's petition for a divorce.

*Judgment affirmed.*