HENRY MINNS'S CASE.

Suffolk.    September 12, 1933. — May 26, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Workmen's Compensation Act*, Findings by Industrial Accident Board,
Appeal, Injuries to which act applies, Report of impartial physician,
Costs.  *Evidence*, Competency; Opinion: expert.

Although a single member of the Industrial Accident Board, who alone
saw the witnesses and heard them testify in proceedings under the
workmen's compensation act, made a certain finding in three sepa-
rate decisions, a contrary finding, made by the board on review of
the evidence presented at the hearings by the single member and in
accordance with the board's view of the weight of the evidence, was
final and superseded the finding by the single member if supported
by any evidence of substance.
Certain evidence, including medical testimony, in proceedings under the
workmen's compensation act, although extremely slender, could not
quite be said to be insufficient to support a finding by the Industrial
Accident Board that, in the course of and arising out of his employ-
ment, the employee sustained an incapacitating physical injury by
the inhalation of sharp and irritating particles of dust into his lungs
which aroused to activity latent preëxisting germs of tuberculosis.
In proceedings under the workmen's compensation act, where the amount
of silica in "Stoughton earth" used by the employer was material,
it was *held*, that, although a report of an impartial physician based
on an analysis of "fuller's earth," showing that it contained a certain
percentage of silica, was incompetent at one hearing before a single
member of the Industrial Accident Board because no analysis of the
"Stoughton earth" so used was introduced in evidence and it did
not appear that any such analysis had been presented to the physician
from any authoritative source, and although the report was not
rendered competent at a subsequent hearing by the single member,
at which the physician was not a witness, by testimony of chemists
that an analysis of "Stoughton earth" so used showed a percent-
age of silica substantially the same as that in the analysis of "fuller's
earth" mentioned by the physician, because there still was nothing
to show from what source came the analysis mentioned by the physi-
cian and nothing to show that "fuller's earth," to which that analysis
pertained, was the same as the "Stoughton earth" used by the em-
ployer, aside from the circumstance that the percentage of silica in
the two materials was substantially the same, nevertheless the in-
surer, upon appeal from a decree awarding compensation, was not
entitled to attack the competency of the physician's report, the single

member having ruled at the second hearing that the testimony there given by the chemist rendered the report competent and the insurer, at a subsequent hearing by the board in review, not having objected to its consideration by the board nor asked for any ruling concerning it.

In proceedings under the workmen's compensation act, there was no reversible error in the allowance by the Industrial Accident Board of a motion to strike from the record a report of an impartial physician where, although the specific grounds on which the motion was based were not sufficient to warrant its allowance, the action by the board was justified because the report went into matters beyond the limits permitted by G. L. (Ter. Ed.) c. 152, § 9.

Notwithstanding the circumstance that a question to an expert witness was objectionable in form in that it sought his opinion on the basis of what he had "heard" as to certain matters, there was no reversible error in the admission of his opinion where his answer to the question showed that, at the hearing at which he testified, he had listened to testimony as to such matters by another witness and had based his opinion on such testimony.

Where, upon appeal by the insurer from a decree awarding compensation in proceedings under the workmen's compensation act, the questions presented to this court were close and difficult to decide, it could not properly be said that the appeal had been prosecuted "without reasonable ground," and the employee was not entitled to costs under G. L. (Ter. Ed.) c. 152, § 14, or c. 261, although the decree was affirmed.

CERTIFICATION to the Superior Court under the provisions of the workmen's compensation act of a decision by the Industrial Accident Board awarding compensation.

Proceedings before the board are described in the opinion. By order of *Swift*, J., a decree in accordance with the board's decision was entered. The insurer appealed.

The case was submitted on briefs.

*P. L. Keenan*, for the insurer.

*H. Hormel, S. B. Horovitz, & B. A. Petkun*, for the claimant.

RUGG, C.J. This is a claim under the workmen's compensation act. The employee worked for the insured, the Hood Rubber Company, from 1920 until November 28, 1928, when he left. It was agreed at the first hearing before a single member of the board on January 29, 1930, that the employee was totally disabled and had been disabled and under observation and the care of a physician since November, 1928. His total disablement continues. No question is raised on these points. The basis of his claim as

now argued is that pulmonary tuberculosis, from which the employee is suffering, was "lit up" or aggravated by the inhalation of a silicate dust composed of sharp hard particles in the course of his employment. The procedure has been somewhat complicated. At the first hearing, the single member by decision filed on March 21, 1930, found that the condition of the employee had no causal relation to his employment. The case next was heard by the board on review and without decision was recommitted to the single member on request of the employee, for the taking of further evidence. The second hearing by the single member was held on December 16, 1930, when further evidence was presented. The single member found that the additional evidence did not change his previous opinion and he reiterated his former finding adverse to the employee by decision filed on January 27, 1931. Upon claim for review by the employee, hearing was held before the board on April 2, 1931. The board, by decision filed on July 23, 1931, reversed the finding of the single member and rendered a decision that the condition of the employee was due to his work and to his consequent inhalation of particles of dust of Stoughton earth, so called, which were very small and sharp. The case was then taken to the Superior Court, where the employee filed a motion for recommittal to the board for correction of the record in specified particulars. Upon that motion a decree was entered on September 19, 1931 (from which no appeal was taken), ordering that the action be recommitted for correction of the record and "to incorporate in the report of the evidence the supplemental report filed by Dr. Cadis Phipps, the impartial physician," with the board on May 24, 1930, "if such report was or is before the board." Pursuant to that decree the board took further action and embodied in its report thereof, filed on February 16, 1932, copy of the supplemental report of Dr. Phipps with certain statements concerning it. After this report of action by the board was filed in court, another decree was entered on March 23, 1932 (from which no appeal was taken), recommitting the case to the board with instructions to correct its record, to allow either party to

move for the introduction of further evidence, to consider the case anew upon all the evidence introduced by all parties, and to strike from the record the impartial report of Dr. Phipps dated May 24, 1930, "unless further evidence shall be introduced making said report competent." Pursuant to that decree the board on April 14, 1932, recommitted the case to the single member for the hearing of further evidence. He found that the employee had not sustained the burden of proving a causal connection between his condition and his employment. This report of the single member was filed on April 8, 1933. The case was finally heard by the board, which by decision filed on June 26, 1933, made findings in favor of the employee. The specific finding is that the "employee was exposed by the nature of his employment to the inhalation of dust particles" of Stoughton earth; "that by reason of such exposure the employee received a personal injury in the course and arising out of his employment by the inhalation of said dust particles which lit up or aggravated a preëxisting latent condition of pulmonary tuberculosis, to the point of complete disablement and total incapacity . . . ." Compensation was awarded. In the Superior Court decree was entered in conformity with the final decision of the board. The appeal of the insurer brings the case here.

It is strongly argued by the insurer that there is no evidence to support the general finding in favor of the employee. This case is peculiar in that the single member, who alone saw the witnesses and heard them testify, by three different decisions rendered after the hearing of oral testimony found that there was no causal connection between the employment and the injury. The board, on review of the evidence presented at the several hearings before the single member, is empowered to reverse the decision of the single member and to enter a decision according to its own view of the weight of the evidence. Such a decision, if supported by any evidence of substance, is final and supersedes the finding of the single member. *Di Giovanni's Case*, 255 Mass. 241. The inquiry is open whether such decision of the board is supported by evidence.

The workmen's compensation act affords no remedy for disease, industrial or otherwise, contracted in the course of and arising out of the employment. *Pimental's Case,* 235 Mass. 598, 602. *Sullivan's Case,* 265 Mass. 497, 499. *Doyle's Case,* 269 Mass. 310. Its relief is confined to personal injury. G. L. (Ter. Ed.) c. 152, § 26. The employee states in his brief that he has never contended that "sharp particles of dust could 'cause' pulmonary tuberculosis" from which he is suffering. "Germs 'cause' the disease. Tuberculosis is a germ disease. The germs lie dormant in the pulmonary region, and are lit up in various ways. One of these ways, is the introduction into the lungs of scratchy dust, such as Stoughton earth." The issue thus precisely raised is whether there is evidence to warrant the finding that physical injury was caused to the employee by the introduction of such sharp and irritating particles into the lungs so that latent preëxisting tubercular germs were aroused to activity.

Summarily stated, there was evidence tending to show that the employee was always well and never had any physical trouble prior to a condition arising shortly before he left his employment; that where he worked for the employer there was plenty of dust, it would be all over him, on his shoulders, face and head, and he had to use an air hose to get the dust off his clothes, and this dust came from the Stoughton earth which he used in his work; that this earth was composed of about seventy per cent of silica; that that dust was made up of very small particles of hard, sharp, gritty substance which looked like quartz or granite. There was medical testimony to the effect in substance that the employee had "an acute exacerbation of the tuberculosis condition" resulting in extreme prostration, which was "a lighting up of the process which had been developing until it reached this point where it lighted up and put him beyond work," and that the present condition of the employee was due to the conditions under which he worked; that X-rays in 1929 tended to show tuberculosis of moderately long standing; that the inhalation of such dust would irritate the lungs and would tend to cause

tuberculosis to become active in any individual predisposed to tuberculosis, or having latent tuberculosis, and that silica in sufficient quantities is detrimental to lung tissue. One expert in tuberculosis testified that tuberculosis is a disease of childhood, that its germs are usually planted before the individual is sixteen years of age and remain dormant until between the ages of twenty to thirty-five. In that fifteen years they light up in about one case out of ten because of innumerable factors that enter into living. He believed that the employee had shown unusual resistance in tuberculosis for one of his particular race. Another witness expressed the opinion that the tuberculosis process was irritated as a result of the employee's work in the dust. One physician testified that in his opinion the present condition of the employee is due to conditions under which he worked.

This evidence is extremely slender to support a finding of causal connection between the present condition of the employee and any physical injury arising out of and in the course of his employment. But, however strong the weight may be against that conclusion, we are of opinion that it cannot quite be pronounced utterly insufficient to support the finding of the board. It falls just within the general rule that such finding cannot be set aside if supported by any evidence. The case is distinguishable from *Green's Case*, 266 Mass. 355; *Breault's Case*, 270 Mass. 256; *Perangelo's Case*, 277 Mass. 59.

Several matters of evidence have been argued. Question is raised as to the fourth report of Dr. Phipps, the impartial physician, dated on May 24, 1930. His three previous reports had been favorable to the insurer; the fourth was highly prejudicial to the insurer. The single member rejected this report on objection by the insurer because based on information which was not in evidence. The board later ruled that this report was before it. But by decree of the Superior Court of March 23, 1932, it was ordered that this report be stricken from the record "unless further evidence shall be introduced making said report competent." That decree wiped out that report

and all previous proceedings concerning it unless it should be shown to be competent by further evidence. The admission of that report by the board was erroneous because, as recited in the decree of March 23, 1932, the statement of the board that the impartial physician had been "furnished with a list of materials used by the employer, the same having been supplied by the insurer at the request of a member of the board," was conceded by "the employee to be incorrect." That ground was sufficient and cannot be controverted. The basis of the opinion of the physician as stated in that report was that he had "read the analysis of the material used by this employee in his work" and wished "to submit the following supplemental opinion." The next sentence of that report was this: "I note that a large amount of fuller's earth was used and the analysis of this substance shows that it contained silica (Si $O_2$) 72.92%. Silica is very injurious to lung tissue and it is believed that it may exert a chemical influence upon the lung structures as well as the mechanical effect from the sharp cutting spicules." At the date of that report no analysis of the material used by the employee in his work had been introduced in evidence, or, so far as appears, presented to the physician from any authoritative source. The final report of the single member shows that an analysis was admitted in evidence before him at the last hearing. A chemist testified concerning two analyses made by him of Stoughton's earth, one in December, 1925, of a sample brought to him by a Mr. Perkins representing the Stoughton Earth Company and by a Mr. Carson representing the employer, and the other in May, 1932, of a sample brought by the clerk of the Stoughton Earth Company. The first analysis showed seventy-two and ninety-two hundredths per cent of silica and the second seventy-one and ninety hundredths per cent of silica. The testimony of the chemist is set out at length in the report of the final hearing before the single member. There was, in our opinion, testimony sufficient to warrant a finding that these analyses were made of samples from the pit whence came material used by the

employer during the period of work for it by the employee. There was also testimony to the effect that this product "has sometimes been called fuller's earth and sometimes Stoughton earth." It was agreed also that "the product sold by the Stoughton Earth Company and called fuller's earth was not the fuller's earth of science." The single member in his final decision states: "Having admitted the evidence as to the analyses made of Stoughton's earth, I now rule that the report of Dr. Cadis Phipps, dated May 24, 1930, is competent with the word 'fuller's' struck out and the word 'Stoughton's' substituted." He then proceeded to discuss the evidentiary value of the report. It was that decision which was considered by the board in making its final findings and decision in favor of the employee. The question is whether this ruling of the single member was right and whether the report had become admissible under the decree of the Superior Court of March 23, 1932, to the effect that it was stricken out "unless further evidence shall be introduced making said report competent."

The testimony of the chemist, used as the basis by the single member for his ruling that the Dr. Phipps report of May 24, 1930, was admissible, was given long after that date. Dr. Phipps was not called as a witness. There is no evidence showing from what source any analysis came to his attention. There is nothing to indicate that it related to the material used by the employer. The material was called by Dr. Phipps "fuller's earth" and not "Stoughton's earth." The single member was without authority to change that report by substituting the latter for the former name. The circumstance that the percentage of silica was substantially the same does not identify them as the same. There is a complete failure of testimony to make the report of May 24, 1930, competent. Therefore, as matter of correct procedure, the decree of the court of March 23, 1932, striking that report from the record remained in full force.

This point, however, is not open to the insurer. The decision of the single member ruled in substance and effect

that sufficient further evidence had been introduced at the final hearing before him to make the report of Dr. Phipps of May 24, 1930, competent. It therefore was in the record as the case came before the board for final decision on review. No objection was made at that hearing to its consideration by the board. No ruling was asked concerning it. The insurer is now in no position to attack it. *Phillips's Case,* 278 Mass. 194, 196. *Korobchuk's Case,* 277 Mass. 534, 538.

The single member in his final report filed on April 8, 1933, states that following the hearing he sent "the evidence taken in these new proceedings to Dr. Phipps for further supplemental impartial opinion." Such opinion was received and incorporated in the report and copies of it were sent to the parties on March 27, 1933. G. L. (Ter. Ed.) c. 152, § 9. When the matter came on for hearing before the board on review on May 11, 1933, the employee filed a motion that this "supplemental impartial opinion" be stricken from the records because based upon "an erroneous set of facts" which are specified in the motion. *Phillips's Case,* 278 Mass. 194, 196. This motion was granted. The grounds specified in the motion are that the impartial physician assumed that the period of work of the employee for the insured was six years instead of eight years, and that in two instances the physician apparently had failed to read parts of the testimony. The motion was seasonably filed. *Phillips's Case,* 278 Mass. 194, 196. The grounds alleged in the motion are not sufficient to warrant expunging the report. They appear almost trifling. At most they might affect its weight. The motion was not general in terms but specific as to details. *Commonwealth v. Mead,* 153 Mass. 284. Nevertheless, we think the principle should be followed that a ruling, right on other grounds, should be upheld even though the reason given may be wrong. *Reilly v. Selectmen of Blackstone,* 266 Mass. 503, 512. This report went beyond the limits warranted by G. L. (Ter. Ed.) c. 152, § 9. It discussed the effect of the ventilating system installed by the employer and the testimony of witnesses. The enabling statute provides that

the "department or any member thereof may appoint a duly qualified impartial physician to examine the injured employee and to report," and that the "report of the physician shall be admissible as evidence in any proceeding before the department or a member thereof; provided, that the employee and the insurer have seasonably been furnished with copies thereof." *Emma's Case*, 242 Mass. 408. It is not necessary to attempt to define the limits of this statute. It is clear that the report here in issue went beyond any permissible construction of the statute. It cannot be said that this action of the board constitutes reversible error. *Blosck's Case*, 277 Mass. 451, 454.

Without narrating the testimony in detail, we think it is enough to say that there was evidence, if believed, to show that the material presented to the chemist for analysis was a fair sample of that used by the employer and was taken from the pit from which the Stoughton Earth Company sold its product in large quantities to the employer. The clerk of that corporation arranged for some of the analyses. The purchasing agent of the employer arranged for analyses. The circumstance that the samples were analyzed in 1925 and in 1932 affected not the competency of the testimony, but only its weight.

The form of the questions put to an expert medical witness called by the employee was objectionable in that it sought an opinion based upon what the witness had "heard as to the dust" and its chemical composition. The answer shows, however, that he had listened to the testimony of the chemist and based his answer upon what he had heard from that source. This is not reversible error.

The main questions presented on this appeal have been close and troublesome in decision. It cannot rightly be said to have been prosecuted by the insurer "without reasonable ground." The employee is not entitled to costs under G. L. (Ter. Ed.) c. 152, § 14. He is not entitled to costs under G. L. (Ter. Ed.) c. 261. *Royal's Case, ante*, 374.

*Decree affirmed.*