## JOSEPH WNUKOWSKI's (dependents') Case.

Worcester.    November 2, 1936. — November 30, 1936.

Present: RUGG, C.J., FIELD, DONAHUE, & QUA, JJ.

*Workmen's Compensation Act,* Injuries to which act applies, Notice, Exceptions, Certification.

On conflicting testimony by medical experts, a finding by the Industrial Accident Board, that inhalation of dust by a "wire drawer" over a long period of time was the cause of his incapacity and subsequent death from emphysema, was warranted.

A finding by the Industrial Accident Board under G. L. (Ter. Ed.) c. 152, § 44, that the insurer had not been prejudiced by want of notice of injury to the employee followed by his death resulting from inhalation of dust over a long period of time, was warranted by evidence of continuous knowledge by the employer of the employee's failing health due to the conditions of the employment.

In proceedings under the workmen's compensation act, exceptions to evidence taken before a single member of the Industrial Accident Board but not urged before the reviewing board have no standing as of right on certification to the Superior Court.

CERTIFICATION to the Superior Court under the workmen's compensation act of a decision by the Industrial Accident Board awarding compensation.

In the Superior Court, the case was heard by *Broadhurst*, J., by whose order a decree was entered in accordance with the decision of the board. The insurer appealed.

The case was submitted on briefs.

*W. Doyle & S. L. Sabel,* for the insurer.

*Nunziato Fusaro & Nicholas Fusaro,* for the claimants.

QUA, J. 1. There was sufficient evidence to support the finding of the Industrial Accident Board that the death of

the employee for which the board has allowed compensation resulted from an injury which arose out of and in the course of his employment.

The record discloses a mass of evidence, chiefly from medical experts on each side and highly contradictory. It is not our province to determine its weight. The finding must stand if it can be supported on any rational view of the evidence. *Jameson's Case*, 254 Mass. 371. *De Pietro's Case*, 284 Mass. 381, 384. We shall therefore confine ourselves to an abbreviated summary of that portion of the evidence favorable to the employee which we deem adequate as a legal basis for the finding.

The deceased employee went to work for the employer as a "wire drawer" in 1919. The room where he worked was very hot, and the air was full of dust so that sometimes he could not see anybody. He was exposed to much dust from wire coated with lime and wire covered with rust. He was exposed to dust from powdered soap. The room was full of lime dust. His clothes, face and mouth were covered with dust. Except for an attack of pneumonia in 1924, from which he recovered, the employee was well until 1930, when his health began to fail. He had difficulty in breathing. He had choking spells that lasted for hours. He complained of a tired feeling in his chest. From time to time he was unable to work. He last worked August 4, 1932, and after that was unable to work at all. He died February 12, 1934. The family physician who treated the deceased and also a specialist in diseases of the chest who examined him before his death stated his physical condition in detail and both testified that in their opinion he was suffering from emphysema, which was described as "dilation of the alveoli of the lungs," causing enlargement, destroying elasticity and resulting in atrophy of the wall, that this was caused by the inhalation of dust, and that death resulted from it.

We discover nothing in the cross-examination of the claimants' experts or elsewhere in the record which amounted to a withdrawal of these opinions or which precluded the board from giving full weight to them. And it would be going much too far for us to rule that the conclusions of the

board are vitiated merely because the single member who first heard the evidence may have been mistaken in stating that only two of the medical witnesses "had an opportunity to examine the man during his lifetime," even if by the most strict construction of the record this was one of the "findings" which the reviewing board affirmed and adopted. This is not enough to show that the reviewing board failed to give due consideration to the testimony of all the witnesses.*

This case is similar to a number of cases in which it has been held that a gradual accumulation of foreign material in the employee's system due to the conditions of his employment, causing definite physical harm, may be found to have brought about a compensable injury sustained at the time when the employee became unable to work. *Johnson's Case*, 217 Mass. 388. *O'Donnell's Case*, 237 Mass. 164. *Bergeron's Case*, 243 Mass. 366. *Sullivan's Case*, 265 Mass. 497. *Fabrizio's Case*, 274 Mass. 352. *Langford's Case*, 278 Mass. 461. *De Filippo's Case*, 284 Mass. 531. *Minns's Case*, 286 Mass. 459. *Anderson's Case*, 288 Mass. 96.

2. No notice of injury was given as required by G. L. (Ter. Ed.) c. 152, § 41. The board found, however, that the insurer was not prejudiced by want of notice. G. L. (Ter. Ed.) c. 152, § 44. This finding was also supported by the evidence. It could be found that the employer knew the conditions of the employment. There was evidence that many times before August 4, 1932, the employee's foreman

---

* The foregoing portion of the opinion relates to an argument by the insurer based on the following portion of the findings by the single member: "There is a wealth of medical testimony to be considered. The claimants produced two doctors, Dr. Michalski and Dr. Stivers. The insurer in presenting its case had a parade of medical experts, each an outstanding authority in his particular field. Of all the doctors who testified, however, on either side, only two of them had an opportunity to examine the man during his lifetime and only two were present at the autopsy that was performed. Dr. Stivers was the only doctor who examined the man during his lifetime and was also present at the autopsy. With this situation in mind I am unable to give as much weight to the testimony offered by medical experts in answer to hypothetical questions as I do to that of the doctors who examined him during his lifetime or who were present at the autopsy."

As to the foregoing findings, the insurer in his brief argued: "This specific portion of the finding clearly refers to the claimant's two doctors as being the two who examined the claimant during his lifetime, as otherwise the reference to the comparative weight which he gave testimony based on answers to hypothetical questions would be meaningless." — REPORTER.

had been informed that the employee was unable to work and that "the job was very bad for him" (see *Bloom's Case*, 222 Mass. 434); that the employee told the foreman about his condition and begged for a change of work; that within a week before the employee ceased work he was examined with reference to his lungs at the employer's "Hospital Department" and that a record was made of the condition found and that on August 4 "the doctor at the shop" said that the employee "couldn't work any more" and sent him home. The employee filed a claim for compensation September 30, 1932, upon which apparently no hearing was held. The employee received medical and hospital treatment. The record shows that full and complete medical evidence was available to the insurer. The board could reasonably believe that the insurer's opportunity to gather and to preserve proof with respect to the other factors in the case, such as the amount and character of the dust to which the employee was exposed over the long period of years involved, was as good upon the filing of a claim in September, 1932, as it would have been if notice had been given in August of that year. Nothing depended upon immediate notice of a single occurrence.

The board found that the employee's condition "was better known to the employer than it was to the employee himself." If, as the insurer contends, this is not in itself quite equivalent to an express finding that the insured "had knowledge of the injury" (§ 44), nevertheless we think that in view of the knowledge which could have been found to have been available to both the insured and the insurer of the employee's condition, and of its connection with his employment, his dismissal on order of the employer's physician, and the actual filing of a claim within less than two months after the employee ceased work, it cannot be said that there was no evidence at all to support the finding which the board did make that the failure to give formal notice as soon as practicable had not prejudiced the insurer. *Sullivan's Case*, 241 Mass. 36. *Gerald's Case*, 247 Mass. 229, 232. *Johnson's Case*, 279 Mass. 481, 484. *Anderson's Case*, 288 Mass. 96, 101. This case is distinguishable from

*Kangas's Case,* 282 Mass. 155, *Booth's Case,* 289 Mass. 322, and *Hatch's Case,* 290 Mass. 259.

3. The insurer in its brief has argued that certain evidence was wrongly admitted by the single member of the board who first heard the case. Without implying that there was any error in the rulings of the single member, it is enough now to say that the record does not show that these questions were pressed before the reviewing board, and therefore the Superior Court was not required to consider them. *Minns's Case,* 286 Mass. 459, 467. *Di Clavio's Case,* 293 Mass. 259, 261.

*Decree affirmed.*