STATE *v.* LORA SPENCER.

May Term, 1940.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed October 1, 1940.

*Wilson, Carver, Davis & Keyser* for the respondent.

*Philip A. Angell,* State's Attorney, for the State.

STURTEVANT, J.   This is a criminal case in which the State charges that the respondent, Lora Spencer, a married woman, committed the crime of adultery with one Freeman Clough, at Braintree, in the County of Orange, on, to wit, the 15th day of March, 1939.   A trial was had at the June term of Orange County Court, and the jury returned a verdict of guilty.   Judgment was entered upon the verdict and the case is here upon the respondent's exceptions.

At the trial it appeared from undisputed evidence that Alfred Spencer, the alleged husband of the respondent, was born at South Barre, Vermont, July 8, 1909, and lived in that vicinity until the fall of 1930, when he went to New Hampshire.   The matter of his residence from this time to about June 23, 1933, will be referred to later.

Alfred Spencer married one Mary Scott, at Williamstown, Vermont, April 20, 1929.   They never lived together as husband and wife, and immediately after the marriage Alfred went to his home in South Barre and she returned to the home of her parents in Barre, Vermont.   Mary Scott Spencer brought her petition for divorce against Alfred Spencer to the March Term, 1931, of Washington County Court and was granted a divorce, decree *nisi,* April 17, 1931, and this decree became absolute on October 17 of that year.

On November 1, 1930, Alfred Spencer went through a marriage ceremony with the respondent, Lora Noyes, at Haverhill, New Hampshire.   Lora is the daughter of George H. Noyes and

at the time of this ceremony had been living with her parents at said Haverhill. Shortly after this, Spencer was arrested upon a charge of bigamy and was convicted upon his plea of guilty to this charge before the Grafton Superior Court, held at Lebanon, New Hampshire, in January, 1931, and sentenced to a term of 120 days in the Grafton County House of Correction, and was discharged from this institution April 13, 1931.

Spencer worked on a road job at Williamstown, Vermont, from sometime "after July, 1931," to about November 1 of that year. During this time the respondent was with him and they stayed with Spencer's sister, Mrs. Comstock, at South Barre, Vermont. Shortly before November 1, 1931, they returned to the home of the respondent's father at Haverhill, New Hampshire, and very soon after this Spencer obtained work from one Perkins at Piermont, New Hampshire, and the respondent went with him and they stayed at the place of his employment. On December 26, 1931, Spencer and the respondent went through a second marriage ceremony at Haverhill, New Hampshire, after which ceremony they immediately returned to the place of his employment at Piermont. They stayed there until January 26, 1932, when Spencer ceased working for said Perkins and they then went to Haverhill, New Hampshire, and stayed at the home of George H. Noyes, with whom Spencer had employment until about June 23, 1933, when they went to live on a farm in Newbury, Vermont, which the respondent's father purchased for her. They continued to live on this farm until the spring of 1939, when the respondent left Spencer and they have not lived together since.

The first question briefed by the respondent is her exception to the refusal of the court to grant her motion for a directed verdict of not guilty upon the ground that there was no evidence from which the jury could reasonably find that she was a married woman at the time of the alleged offense. This motion was based upon the provisions of the following statutes:

> "P. L. 3066: If a person residing and intending to continue to reside in this state, who is prohibited from contracting marriage under the laws of this state, goes into another state or country and there contracts a marriage prohibited and declared void

by the laws of this state, such marriage shall be null and void for all purposes in this state with the same effect as though such prohibited marriage had been entered into in this state.''

''P. L. 3168: When a marriage is dissolved pursuant to this chapter, the parties shall be deemed single and may lawfully marry again; but it shall not be lawful for the libellee to marry a person other than the libellant for two years from the time such divorce is granted unless the libellant dies.''

No question is made but that the State had the burden of showing that at the time of the alleged offense the respondent was a married woman and to do this relied upon the claimed validity of the marriage ceremony entered into by the respondent and Alfred Spencer at Haverhill, New Hampshire, December 26, 1931.

In support of her argument that her motion for a directed verdict should have been granted, the respondent calls our attention to certain portions of Spencer's testimony where he stated in effect that there never came a time either before or after the marriage ceremony in question that he intended to make any place in New Hampshire his permanent home, neither was there ever a time when he intended to live in New Hampshire for the indefinite future and that all the while he lived in New Hampshire he intended at some time to return to Vermont. Spencer also testified in effect that at the time of the marriage in question he knew he could not marry in Vermont and that he went to New Hampshire to avoid the Vermont laws as to marriage. There was also other evidence tending to support respondent's contention.

However, Spencer also testified that after he stopped work on the Williamstown job in the fall of 1931 and went to New Hampshire he had no intention one way or the other as to returning to Vermont; that from the time he was released from the House of Correction April 13, 1931, until June 23, 1933, excepting while he worked on the Williamstown job, he had work in New Hampshire and came to Vermont for short visits only and that he did not stay overnight in Vermont as he could remember for a period of more than a year and a half before the

time he and the respondent went to live on the farm in Newbury in the summer of 1933. On cross-examination Spencer was asked the following question:

"When you went through with that wedding ceremony with Lora over there on the 26th of December, 1931, if that was the date, you were then intending, weren't you, to come back to Vermont?"

To this Spencer answered:

"I didn't know whether I was coming back to Vermont or whether I was going to stay in New Hampshire, that is something that is very impossible; a man never knows where he is going to be overnight hardly. I had no home. Where would I expect to be without no work? I couldn't tell whether I was going to be in New Hampshire or in Vermont. I had to go where work was at that time."

The respondent contends that under the circumstances of this case her motion for a directed verdict should have been granted and cites *Wheelock* v. *Wheelock*, 103 Vt. 417, 154 Atl. 665, as supporting her contention.

That was a divorce case brought by Hilda G. Wheelock v. Harry C. Wheelock at the September term, 1930, of Chittenden County Court. The parties filed an agreed statement of facts, the substance of which as set forth in the opinion is as follows: "At the March Term, 1917, of Chittenden county court, a divorce was granted to Mabelle C. Wheelock, a former wife of the libelee, from him, the decree being dated May 22, 1917. The marriage of the parties in the instant case, specified and relied upon in the libel, was contracted in the city of New York on June 10, 1918. This marriage was contracted by both parties in good faith, but they knew at the time that they could not be legally married in Vermont. The libelee resided in Burlington, Vt., at the time of the marriage in New York, and intended to return and continue to reside there. Immediately after the marriage the parties returned to Burlington and resided there and lived together as husband and wife until November 12, 1929. Said Mabelle C. Wheelock was living at the time of the New York marriage, and said decree of divorce was then in force.

"It is further agreed that at the time of the New York marriage, the marriage in Vermont of the libelee to any person other than the said Mabelle C. Wheelock, within three years after the date of said decree, was prohibited under the laws of this State, and under the provisions of G. L. 3514." (G. L. 3514 is now P. L. 3066).

The libelee filed a motion to dismiss the libel on the ground that under these facts the New York marriage was null and void for all purposes within this State with the same effect as though such marriage had been entered into in this State by reason of the provisions of G. L. 3514 (now P. L. 3066). The motion was granted, the libel was dismissed and the libellant brought the case to this Court upon exceptions and the judgment was affirmed.

In the Wheelock case it was conceded that at the time of the marriage in New York Wheelock resided in this State and intended to and did immediately return and continue to reside in this State. These facts distinguish the Wheelock case from the one before us. In the case we are considering the question as to Spencer's residence at the time of the marriage in New Hampshire as well as his intent as to continuing to reside in Vermont were disputed questions. The respondent also cites a Massachusetts case, *Atwood* v. *Atwood,* reported in 247 Mass. 229, 8 N. E. 2d. 916, 918. In the Atwood case the material facts were as follows: Benjamin W. Atwood was divorced from a former wife in Massachusetts on a libel brought by her in the Superior Court by decree which became absolute August 20, 1917. By statute he was prohibited from marrying again within two years from that date. Within that period, on October 4, 1918, the petitioner, Ethel G. Atwood, and said Benjamin W. Atwood were married in Baltimore, Maryland. The petitioner left her home in South Hanson, Massachusetts, on the date of the marriage and immediately returned there after the ceremony was performed. At the time of the marriage Atwood was in the United States military service and immediately after the ceremony left for France where he remained eight months. Upon his return to this country he went to live with the petitioner at South Hanson. The petitioner sought a decree for separate support. The petitionee moved to dismiss the petition and claimed that his marriage to the petitioner at Baltimore, Maryland, was void

because of the provisions of G. L. (Ter. Ed.) c. 207, Sec. 10, the provisions of which statute are similar to our P. L. 3066. The lower court found that at the time of the marriage in Baltimore, Maryland, Atwood was not residing in Massachusetts, also that at that time Atwood did not have the intention to continue to reside in Massachusetts.

Upon these findings Atwood's motion to dismiss was denied and a decree was entered for the petitioner, and Atwood had exceptions. The Supreme Judicial Court of Massachusetts in speaking of the statute in question, which is similar to our P. L. 3066, stated as follows: ''By its terms the statute does not here apply unless, for one thing, the respondent was domiciled in Massachusetts when he was married to the petitioner in Maryland.

''The terms of the statute upon which respondent relies would not be fully met even if it appeared that at the time of the marriage he had a domicile in Massachusetts. * * * The intention required by the statute here under consideration is not the intention which is essential to a change of domicile. It is the intention with reference to an old home; that is, in this case, the intention to continue to have a residence in Massachusetts. In order that the statute here apply, not only must the respondent have a domicile here in Massachusetts, but it must also be found that he had the intention to continue to have a domicile in this Commonwealth.''

It was found that the findings of the court below as to residence and intention at the time of the marriage ceremony in question were supported by proper evidence and that therefore the statute in question did not apply and the decree for the petitioner was affirmed.

Applying the principles set forth in the *Atwood* case, *supra,* to the case before us it follows that in order for P. L. 3066 to apply, Spencer at the time of the marriage in Haverhill, New Hampshire, December 26, 1931, must not only have had his domicile in Vermont, but he must also at that time have had the intention to continue his domicile in this State. The testimony of Spencer as to these matters was conflicting but since it was not impossible it was for the jury to weigh and consider. *Steele* v. *Lackey,* 107 Vt. 192, 198, 177 Atl. 309. It was for the jury to say which of the statements they would accept. *Steele* v. *Lackey, supra.*

■ It follows that the respondent's motion for a directed verdict was properly overruled.

The respondent further contends that for the purposes of this case the New Hampshire laws as to divorce should be assumed to be the same as the laws of this State because there was no evidence introduced to show the contrary. In her brief she states that " * * * we must assume then for the purposes of this trial that New Hampshire in 1931 had a statute forbidding a person against whom a divorce has been procured from marrying again within two years. If this is so, the attempted marriage of Spencer and respondent in 1931 was null and void even in New Hampshire and the court should have granted the motion for a directed verdict.'' In her brief the respondent does not point out to what particular section of our divorce law she has reference. However, passing over this question of whether this point is sufficiently briefed to receive consideration, we assume from her statement as above quoted that she contends we should presume that in 1931 New Hampshire had a statute like the Vermont statute P. L. 3168, *supra.*

■ We do not need to pass upon the question as to whether we should, under the circumstances of this case, make this assumption. If New Hampshire had such a law, it would apply only to persons who were parties to ''a marriage dissolved under the provisions of this chapter'', that is, under the divorce laws of that State, and would have no application to the facts in the case before us. Therefore, we give this question no further consideration.

The court in its charge to the jury read P. L. 3066 as hereinbefore quoted and then stated: ''Of course, on the 26th day of December, 1931, Alfred was within the provisions of that statute, if the statute applied to him, and as applied to the case in hand that statute means that Alfred Spencer had a right to go to New Hampshire and contract a valid marriage there which would be good both in New Hampshire and in Vermont provided that at the time of the marriage ceremony he did not reside in this State and did not intend to continue to reside in this State. Now the other side of the proposition, applying the statute to the facts in hand is this: Such a marriage in New Hampshire by Alfred Spencer would be null and void for all purposes if, at the time of the marriage ceremony in New Hampshire, he resided

and intended to continue to reside in this State. * * * If he then resided and intended to continue to reside in Vermont, the purported marriage is bad. On the other hand, if on that date he either did not reside in Vermont or, residing in Vermont, did not intend to continue to reside in Vermont, then the marriage is good.'' The respondent excepted to this part of the charge upon the ground that it restricted materiality of Spencer's residence and intention as to residence to the time of the marriage ceremony and insisted that ''the nub'' of the statute was Spencer's residence and intention as to residence when he left Vermont and went into New Hampshire in the fall of 1931. The respondent insisted that the marriage in question was void because of the provision of the statute P. L. 3066.

There was no question below but that Spencer was prohibited from contracting a marriage under the laws of this State except with Mary Scott Spencer on December 26, 1931, when the marriage was solemnized in the State of New Hampshire, and that he knew that fact. It was also undisputed that Spencer went from this State into New Hampshire and there contracted a marriage which would have been null and void if entered into in this State. Applying the provisions of P. L. 3066, *supra,* to these circumstances, it follows that the application of this statute to the marriage in question depends upon whether Spencer at the time of the marriage resided and intended to continue to reside in this State. These were the only material matters bearing upon the application of this statute to the marriage in question which were in dispute. Under the circumstances of this case it follows that if at the time of the marriage Spencer resided and intended to continue to reside in this State, this statute would render such marriage void in this State. It also follows that if it should be found that at the time of the marriage Spencer either did not reside in Vermont or, residing in Vermont, he then had no intention of continuing to reside here, this statute would have no application to said marriage. P. L. 3066; *Wheelock* v. *Wheelock, supra; Atwood* v. *Atwood, supra.* It follows that error in the charge is not made to appear.

The result is:

*Exceptions overruled.*